## Tim CARR *v.* SUZUKI MOTOR COMPANY and U.S. SUZUKI MOTOR CORP.

83-9                                              655 S.W.2d 364

### Supreme Court of Arkansas
### Opinion delivered June 27, 1983
[Rehearing denied September 12, 1983.*]

*HICKMAN and DUDLEY, JJ., would grant rehearing.

*James J. Leonard, Kenneth Clancy, John T. Haskins,* and *James F. Swindoll,* for appellant.

*Davis, Cox & Wright,* for appellees.

RICHARD B. ADKISSON, Chief Justice. Appellant, Tim Carr, was rendered a quadriplegic after he was thrown from a motorcycle manufactured and distributed by appellees, Suzuki Motor Company and U.S. Suzuki Motor Corporation. It was undisputed that only one of the bike's two rear shock absorbers was functioning on the day of the accident. Suit was brought on the theories of negligence, breach of warranty, and strict liability. After a videotape was admitted into evidence showing a professional driver riding a motorcycle with two functioning shocks and then riding the same motorcycle with only one functioning shock, the jury returned a verdict for appellees. The only issue on appeal is whether the trial court erred in admitting the film in question. We reverse and remand.

The evidence introduced at trial revealed that the motorcycle appellant was riding on the day of the accident belonged to one of his friends. He and the friend had taken the bike to a motocross race in Searcy, Arkansas. The friend took the bike on several practice runs, but decided not to ride it in the race. He noticed the bike was acting "funny," but asked if appellant wanted to race it and appellant said that he did. Appellant had completed two laps of the track when, while traveling between 30 and 35 m.p.h., he took a jump which was approximately 30 inches high. He testified at trial that he felt the bike "bottom out" as it came down and the seat hit him "on the bottom side" and threw him up in the air, although at that time he was still holding onto the handlebars. He was trying to regain control when he hit the second jump. This time he was thrown over the handlebars of the bike, landing on his head.

At trial, appellant's expert testified that the accident had occurred because one of the two rear shock absorbers was dead; according to him the faulty shock failed to provide the usual damping effect which caused the bike to rebound upward with such force as to cause appellant to lose control. On the other hand, appellees' expert witness testified that a rider would feel no difference between the rebound from landing with one bad shock absorber and that from landing with two good shock absorbers. In conjunction with this testimony a videotape of a test conducted by appellees' expert witness was introduced into evidence. It consisted of a professional driver riding a motorcycle similar to the one in question over motocross-type terrain. On the first six runs both of the motorcycle's shock absorbers were functioning; on the last six runs only one shock was functioning.

It is undisputed that the test did not duplicate the exact conditions of the actual accident. The rider in the test was a professional, an employee of Suzuki who had ridden in 500 major motocross events, whereas appellant was an amateur. The professional rider knew he was riding a bike with only one shock functioning; appellant did not. The test demonstrated only one jump of 18 inches, but appellant made two successive jumps of 30 inches. Furthermore, the springs on the two bikes were different. In spite of these differences the trial court admitted the film for the limited purpose of determining whether or not there was any perceptible difference in rebound of a motorcycle with one nonfunctioning shock as opposed to a motorcycle with both shocks functioning, regardless of the driver. After careful consideration we have concluded that it was error to admit this film.

It is well settled that when a test or experiment is an attempt to reenact the original happening, the essential elements of the experiment must be substantially similar to those existing at the time of the accident. *Hubbard* v. *McDonough Power Equipment*, 83 Ill. App. 3d 272, 404 N.E.2d 311 (1980); *Payne* v. *Greenberg Construction*, 130 Ariz. 338, 636 P.2d 116 (1981). We applied this same rule in *Dritt* v. *Morris*, 235 Ark. 40, 357 S.W.2d 13 (1962) where we held that although it was not necessary that

conditions of an experiment be identical to those existing at the time of the occurrence, there must be a substantial similarity, and the variation must not be likely to confuse and mislead the jury.

However, if an experiment is designed to show the general traits and capacities of a material involved in the controversy, it is admissible even though it does not conform to the conditions surrounding the litigated situation. *Rayner* v. *Stauffer Chemical Co.*, 120 Ariz. 328, 585 P.2d 1240 (1978). For example, in *Brandt* v. *French*, 638 F.2d 209 (1981) a film illustrating a motorcycle's angles of "lean" and radii for turns from different positions was held admissible even though it did not duplicate the accident conditions because its purpose was to show mechanical principles rather than depict the actual accident.

Here, however, the film was of questionable relevancy under Rule 402, Uniform Rules of Evidence, because, in effect, the film portrayed the riding skills of a professional driver rather than any mechanical principle associated with the rebound effect. Any deficiency in the operation of the motorcycle with only one good shock absorber could too easily have been masked by the skill and experience of the professional test driver.

In any event, assuming relevancy, the experiment should have been excluded as prejudicial and misleading under Rule 403, Uniform Rules of Evidence. Undoubtedly, the jury concentrated on the extraordinary skills of the test driver rather than the mechanics of the motorcycle. The conclusion is inescapable that, after viewing the film, the mind-set of the jury was that one shock would work just as well as two, not because of any perceptible difference in the mechanical performance of the motorcycle, but because the professional driver was not thrown over the handlebars as was appellant. The prejudicial impact of the film on the jury far outweighed any probative value it might have had. For this reason we reverse and remand for a new trial.

Reversed and remanded.

HICKMAN and DUDLEY, JJ., dissent.