Ralph A. CARTER *v.*
MISSOURI PACIFIC RAILROAD COMPANY
and D. C. KOLB

84-114                                    681 S.W.2d 314

Supreme Court of Arkansas
Opinion delivered December 17, 1984

*Roy A. Waters, Jr.* and *William R. Wilson, Jr.,* for appellant.

*Herschel H. Friday* and *Frederick S. Ursery,* by: *Frederick S. Ursery,* for appellee.

EUGENE T. KELLEY, Special Justice. The appellant, Ralph Carter, appeals from a jury defendant's verdict in favor of the appellee, Missouri Pacific Railroad. On October 22, 1982, at about 8:15 a.m., appellant was driving his pickup truck east on U. S. Highway 64 near Wynne, Arkansas. Mr. Carter's pickup truck was struck by a northbound train as he attempted to cross the tracks on a clear morning. At the time of the accident, the crossing's flashing light signal device was against a backdrop of a brilliant rising sun. Mr. Carter's view of the tracks was obstructed by a large building to the south, the direction from which the train was approaching.

The appellant questions three rulings on the admissibility of evidence made by the trial court. Appellee contends that the three evidentiary rulings were within the sound discretion of the trial judge.

The first issue raised by appellant is that the trial judge erred in admitting into evidence a film produced by the appellee that showed the crossing signals against a backdrop of dark clouds. The court in admitting this film into evidence instructed the jury that the film should not be considered as a re-creation film but only as the site appeared

on the morning the film was taken. The film was made on a cloudy day with the sun behind a dark cloud and the sun could not be seen. This court recently considered another case which involved the introduction into evidence of a film which was characterized as a re-creation film that was found to be misleading and prejudicial. *Carr* v. *Suzuki Motor Co.,* 280 Ark. 1, 655 S.W.2d 364 (1983).

Both the appellant and the appellee cite *Carr* in support of their respective contentions. The appellee contends that *Carr* establishes a strict standard for only those films which attempt a re-creation of the original happening. In a re-creation film the essential elements must be substantially similar to those existing at the time of the accident. The appellee further urges a more lenient standard for those films where no re-creation is attempted. In support of admitting this film, three (3) cases have been cited. *Rayner* v. *Stauffer Chemical Company,* 120 Ariz. App. 328, 585 P.2d 1240 (1978); *Wagner* v. *International Harvester Co.,* 611 F.2d 224 (8th Cir. 1979), and *Collins* v. *B. F. Goodrich Co.,* 558 F.2d 908 (8th Cir. 1977). These cases deal with films of experimental evidence which tends to show general traits or characteristics of a scientific nature. The appellant relies primarily on *Carr* to exclude this motion picture as a re-creation film.

A review of the facts surrounding the making of the film is in order. Mr. John Orville Thomas, a professional photographer, filmed the crossing at Wynne on September 26, 1983, at approximately 8:17 in the morning. A camera was placed inside a truck and driven down the highway toward the crossing in an easterly direction. The camera started filming approximately 1,500 feet west of the crossing and went straight to the crossing. The vehicle was driven at about 35 miles per hour. The lights at the crossing were activated by the railroad company. Other pictures were taken on the side of the road at various distances. On cross-examination the photographer admitted that the sun was behind a dark hanging cloud and could not be seen. In the film the crossing lights appeared bright against the dark background.

The court is persuaded that this film is an attempted re-creation of. the accident scene by the appellee railroad company. The undisputed testimony indicates that the film was taken at approximately the same time of day of the accident; that a camera was placed in a truck and driven at the rate of 35 miles per hour through the crossing; and that the appellee arranged to activate the flashing crossing lights. The appellee contends that the film was useful and necessary and within the sound discretion of the trial judge in order to help the jury to understand the general characteristics of the intersection. The record indicates that there were numerous diagrams, charts, and testimony all of which were available to the jury for its consideration. The most important issue before the jury was why the appellant failed to see the lights at the crossing. This issue was central to the appellant's claim of negligence. We find that the film depicted the lights in operation under circumstances which were substantially dissimilar to those testified to by the eyewitnesses. The unfair prejudice that arises as a result of the jury seeing the bright crossing lights in operation far outweighs the usefulness to the jury to better understand the scene. This court finds that the film did not fairly and accurately reflect the scene at the time of the accident and should not have been admitted into evidence. We have stated in *Carr* v. *Suzuki:*

> It is well settled that when a test or experiment is an attempt to reenact the original happening, the essential elements of the experiement must be substantially similar to those existing at the time of the accident. *Hubbard* v. *McDonough Power Equipment,* 83 Ill. App. 3d 272, 38 Ill. Dec. 887, 404 N.E.2d 311 (1980); *Payne* v. *M. Greenberg Construction,* 130 Ariz. 338, 636 P.2d 116 (1981). We applied this same rule in *Dritt* v. *Morris,* 235 Ark. 40, 357 S.W.2d 13 (1962) where we held that although it was not necessary that conditions of an experiment be identical to those existing at the time of the occurrence, there must be a substantial similarity, and the variation must not be likely to confuse and mislead the jury."

Other cases have held that if a film is misleading, it should be excluded. See *Wagner* v. *International Harvester,* 611 F.2d

224, 233 (8th Cir. 1979); *Collins* v. *B. F. Goodrich Co.*, 558 F.2d 908, 910 (8th Cir. 1977).

The second issue involves the trial judge's refusal to admit evidence of two prior accidents and two prior near misses. The record indicates that the accidents and the near misses all occurred in the afternoon when the sun was in a different location. The flashing lights at the crossing were changed after the two prior accidents and after the two near misses from eight inch diameter lights to twelve inch lights which were in place at the time of the accident. Because of the changed conditions evidence of the prior accidents and near misses was properly refused.

The general rule with regard to the admissibility of evidence of similar occurrences is that such evidence is admissible only upon a showing that the events arose out of the same or substantially similar circumstances and the burden rests on the party offering such evidence to prove that the necessary similarity of conditions exists. *Fulwider* v. *Woods*, 249 Ark. 776, 461 S.W.2d 581 (1971); See also - *St. Louis S.R. Co.* v. *Jackson*, 242 Ark. 858, 416 S.W.2d 273, later app 246 Ark. 168, 438 S.W.2d 41 (1967); *Chicago, R.I. & P.R. Co.* v. *Lynch*, 246 Ark. 1281, 441 S.W.2d 793 (1969); *Oates* v. *St. Louis S.R. Co.*, 266 Ark. 527, 587 S.W.2d 10 (1979).

The final issued raised on appeal is based on an agreed stipulation to exclude evidence that Mr. Carter had been divorced twice. The parties had agreed that there would be no voir dire of the jury on the issue of divorce. The parties had agreed that unless the issue of divorce was raised by the appellant, the appellee would not bring the matter up. On direct examination, appellant was asked if he was "single" he answered yes. At the end of direct examination, appellee counsel moved that he be allowed to inquire concerning appellant's marital status. The trial court permitted one question on cross-examination. The very first question on cross-examination of Mr. Carter was:

Question: Mr. Carter, you testified that you are single. Is it not correct that you have been divorced

twice?

Answer:    Well, that is correct.

The appellant argues that the lower court erred by permitting the appellee to question Mr. Carter about his being divorced twice. The appellant also contends that the failure of the trial court to allow the appellant to voir dire the jury at that point in the trial as to their feelings and beliefs concerning divorce was in error.

The parties knew that this was to be a lengthy trial, that the voir dire had been restricted to omit any reference to divorce and that the appellant relied on the motion in limine. The response of the appellant that he was single is the minimum testimony that could be given by the witness concerning his marital status without totally ignoring it. The appellee's emphasis on the fact that Mr. Carter had been divorced twice is exactly the evidence which the parties and the court had agreed not to admit into evidence.

"We have often held that the scope and extent of cross-examination of a witness is largely discretionary with the trial court, and unless that discretion is abused, no reversible error is committed. *King* v. *State,* 106 Ark. 160, 152 S.W. 990; *Dawson* v. *State,* 121 Ark. 211, 180 S.W. 761; *Peterson* v. *Jackson,* 193 Ark. 880, 103 S.W.2d 640."

Considering all the surrounding circumstances, it appears that the appellee went too far in calling undue attention to appellant's prior divorces.

Reversed and remanded.

GEORGE ROSE SMITH, J., concurs in part.

HUBBELL, C.J., and HICKMAN, J., dissent.

DUDLEY, J., not particiapting.

GEORGE ROSE SMITH, Justice, concurring. To some

people the statement that a man is single implies that he has never been married. For that reason, if the plaintiff again brings that point out on direct examination, I think the question about his divorces will again have been invited.

WEBB HUBBELL, Chief Justice, dissenting. Appellant's attorney admitted in his oral argument that he did not attempt to introduce photographs of the crossing in the morning sun because it would be difficult if not impossible to take a photograph of the crossing looking directly in the sun. Yet appellant objects to the introduction of appellee's film because he claims it was taken on a cloudy day. The film was introduced with a limiting instruction which stated that the film was not a re-creation, but only to be considered as to what the crossing looked like on the morning the film was taken. Appellant's attorney had ample opportunity to introduce his own evidence about what the crossing looked like on the morning of the accident, cross examine the photographer, and argue to the jury that the lighting conditions were not similar to the day of the accident.

The crossing had several sets of lights. The overhead lights might be obscured by a bright morning or evening sun, but the crossing also had roadside eye level lights, and a jury should be entitled to view those lights as well as the overhead lights.

Our decision in *Carr* v. *Suzuki Motor Co.,* 280 Ark. 1, 655 S.W.2d 364 (1983) — and now the majority's decision in this case — severely limits both plaintiffs and defendants from using demonstrative evidence. Appellant was trying to prove that the entire crossing was dangerous. The location of surrounding buildings, as well as the sun, and the lack of crossing arms, were part of his argument. Yet the majority would prevent either side from introducing a film on how the crossing looked from an oncoming vehicle unless the sun is directly in the camera. The majority fails to tell us how such a photograph could be made. I am concerned about where the majority is heading in the area of demonstrative evidence.

I also disagree that appellee's one question about

marital status during a two day trial warrants a reversal of a jury verdict. Appellant did open the door to the inquiry, and I would not reverse on that point alone.

HICKMAN, J., joins in this dissent.