POTLATCH CORPORATION *v.*
MISSOURI PACIFIC RAILROAD COMPANY

94-910 902 S.W.2d 217

Supreme Court of Arkansas
Opinion delivered July 10, 1995

*Williams & Anderson,* by: *John E. Tull, III, Philip S. Anderson* and *Leon Holmes,* for appellant.

*Ramsay, Bridgforth, Harrelson & Staring,* by: *Phillip A. Raley* and *William M. Bridgforth,* for appellee.

ROBERT H. DUDLEY, Justice. Missouri Pacific Railroad Co. filed a suit against Potlatch Corporation for negligence and breach of contract. The trial on the merits lasted six days. At the close of plaintiff's case, the trial court denied defendant Potlatch's motion for a directed verdict. At the close of the defendant's case, defendant renewed its motion for a directed verdict. MoPac moved for a plaintiff's directed verdict. The trial court denied both motions. After rebuttal each party moved for a directed verdict. The trial court again denied both motions. The jury returned a defendant's verdict. The trial court later entered a judgment notwithstanding the verdict and awarded compensatory damages of $2,350,000 to plaintiff plus attorney's fees in the amount of $25,000. We reverse and reinstate the jury verdict.

■ The procedure in this case was unusual, and for a clear understanding, we set out that procedure in detail along with the standard of review. The trial court granted a judgment notwithstanding the verdict in favor of the plaintiff. A motion for a directed verdict is a condition precedent to a motion for a judgment notwithstanding the verdict. ARCP Rule 50(b); *Wheeler Motor Co.* v. *Roth,* 315·Ark. 318, 867 S.W.2d 446 (1993). Technically, a motion for a judgment notwithstanding the verdict is just a renewal of the motion for a directed verdict. *Id.* at 323, 867 S.W.2d at 448. In this case the judgment notwithstanding the verdict was a renewal of the motion for a directed verdict *by the party having the burden of proof, plaintiff MoPac.*

■ Absent rare circumstances, we do not affirm the grant of a directed verdict, or a subsequent motion for a judgment notwithstanding the verdict, *in favor of the party with the burden of proof* in a negligence case. The reasoning is sound. When the complaint is denied in the answer, the plaintiff in a negligence action has the burden of proving negligence, proximate cause, and damages. The defendant is entitled to have the jury pass on the credibility of the plaintiff's evidence even if the defendant offers no evidence. Under the Arkansas Constitution, the trial court is prohibited from telling the jurors that they are

to believe the plaintiff's witnesses. Ark. Const. art. 2, § 7. The jury, in the first instance, is the sole judge of the credibility of the witnesses and of the weight and value of the evidence, and may believe or disbelieve the testimony of one or all of the plaintiff's witnesses, even though the evidence is uncontradicted and unimpeached. *Barger* v. *Farrell*, 289 Ark. 252, 711 S.W.2d 773 (1986); *Morton* v. *American Medical Int'l, Inc.*, 286 Ark. 88, 689 S.W.2d 535 (1985); *Spink* v. *Mourton*, 235 Ark. 919, 362 S.W.2d 665 (1962). As a result, we have said that no matter how strong the evidence of the party having the burden of proof in a negligence case, "that party is not entitled to have those facts declared to have reality as a matter of law, *unless there is utterly no rational basis in the situation, testimonially, circumstantially, or inferentially, for a jury to believe otherwise." Young* v. *Johnson*, 311 Ark. 551, 555 S.W.2d 510 (1993) (emphasis added); (quoting *United States Fire Ins. Co.* v. *Milner Hotels*, 253 F.2d 542, 547 (8th Cir. 1958)); *Morton*, 286 Ark. at 90, 689 S.W.2d at 537; *Spink*, 235 Ark. at 922, 362 S.W.2d at 667.

In 1985, we wrote that we were not aware of any Arkansas case in which a verdict for the party not having the burden of proof was set aside in a negligence case solely because it was not supported by substantial evidence. *Morton*, 286 Ark. at 90, 689 S.W.2d at 536. The statement still holds true although there is a case that deserves mention. In *Young* v. *Johnson*, 311 Ark. 551, 555 S.W.2d 510 (1993), the defendant filed a counterclaim against the plaintiff. The plaintiff moved for a directed verdict on the defendant's counterclaim. The defendant was the party with the burden of proof on the counterclaim. The trial court denied the motion. We reversed because the defendant did not meet the burden with substantial evidence. In the opinion we noted that we are "loath" to affirm a directed verdict in favor of the party who has the burden of proof. *Young*, 311 Ark. at 555, 845 S.W.2d at 513.

██ In summary, we affirm the grant of a directed verdict or the grant of a judgment notwithstanding the verdict in favor of the party having the burden of proof only when "there is utterly no rational basis in the situation, testimonially, circumstantially, or inferentially, for a jury to believe otherwise." *United States Fire Ins. Co.*, 253 F.2d at 547.

In the case at bar, both parties have misstated the above standard and have argued this case using the standard applicable when the party that does not have the burden of proof moves for a directed verdict, which is whether there is substantial evidence to support a verdict. We address the points of appeal as they are argued by the parties because, in this case, it makes no difference since the party that did not have a burden of proof, defendant Potlatch, put on a substantial amount of evidence which supported the jury's verdict.

We now turn to the facts of this case. In the early 1960's, Potlatch began making plans to build a pulp and paper mill at Cypress Bend on the Mississippi River in Desha County. In 1974, it started construction of the mill and MoPac asked to provide rail service. The principal raw materials utilized at the mill are woodchips which are shipped from another Potlatch facility at Warren. MoPac agreed to provide sufficient numbers of woodchip cars for Potlatch to continually operate the Cypress Bend facility. In 1977, MoPac and Potlatch executed an Industrial Track Agreement.

After the Agreement was entered, MoPac began delivering loaded chip cars to the mill every morning. There are three sets of tracks in the mill yard that are relevant to this suit. The first is the loaded chip track, the second is the dumper track, and the third is the empty chip track. Every morning MoPac delivers the loaded chip cars and leaves them standing on the loaded chip track. A Potlatch engine then transports the cars to a rotary dumper, which rotates each car upside down and dumps the contents down onto a conveyor system which conveys the chips into the mill. The rotary dumper then turns the car upright, and immediately afterwards a Potlatch switch engine pushes the unloaded car out of the dumper and onto the track. As the empty car moves away from the dumper, gravity causes it to travel down a declining track for a designed distance. It then begins to go up an incline until stopped by gravity, at which point it begins to roll back downhill. As it rolls back downhill an automatic switch causes it to move onto the empty chip track. The empty cars come to a stop on the empty chip track and are subsequently removed by the same MoPac crew that delivered the load of chips earlier that day.

On January 28, 1982, Clarence Higley, an employee of plaintiff MoPac, was severely injured while working on the empty car track. His arm was caught between two railroad cars, and eventually his arm had to be surgically amputated. On the day of the accident, Higley's MoPac crew left the loaded chip cars on the loaded chip track and then proceeded to pick up the empty cars sitting on the empty car track. A MoPac employee was coupling the empty cars by pushing them into one another with the MoPac engine. Higley saw that two cars failed to couple and walked to those cars to manually couple them. As he got between the cars, they moved and he was pinned between them. He testified that the movement of the car came from the direction of MoPac's engine and not from the direction of the dumper facility. Evidence showed that the Potlatch engine does not operate on the empty chip track where the injury occurred.

Higley filed a Federal Employers' Liability Action suit against MoPac in federal district court, was awarded a judgment of $2,371,000, and eventually settled with MoPac for $2,350,000. Mopac asked Potlatch for indemnity under the Industrial Track Agreement. Potlatch concluded that the accident was not covered by the indemnity agreement and declined to defend the suit. After Higley obtained the $2,350,000 FELA judgment against MoPac, it filed this indemnity action against Potlatch. The case was tried to a jury in circuit court, and the jury found for Potlatch. MoPac moved for judgment notwithstanding the verdict, and in the alternative, a new trial. The trial court granted a judgment notwithstanding the verdict.

In granting the judgment notwithstanding the verdict, the trial court erroneously stated that Potlatch's engineer was operating Potlatch's engine at the time Higley was injured. To the contrary, all of the evidence was that MoPac's engineer was operating MoPac's engine and Potlatch's engine was not being operated. The trial court's oral findings of fact were incorporated into the judgment notwithstanding the verdict.

In addition, there was evidence that the Potlatch rotary dumper crew was not negligent in the manner in which they opened the car couplers on the day of the accident, and there was evidence that Potlatch was not negligent in the design of the yard and tracks. Therefore, even using the standard the parties have

advanced, there was substantial evidence to support the jury's finding that Potlatch was not guilty of negligence. Under the correct standard of review, we would hold that the evidence did not clearly and unmistakably show that MoPac, the party with the burden of proof, was entitled to have facts declared sufficient as a matter of law that Potlatch was guilty of negligence. Thus, the trial court erred in granting the judgment notwithstanding the verdict on the negligence claim.

■ We now turn to the assignments that the trial court erred in granting a judgment notwithstanding the verdict because Potlatch breached the contract in refusing to indemnify MoPac. Agreements to indemnify an indemnitee against its own negligence are generally disfavored, closely scrutinized, strictly construed against the indemnitee and in favor of the indemnitor, and will not be upheld unless expressed in such clear and unequivocal terms that no other meaning can be ascribed. However, strict construction need not be applied in interpretation of indemnification agreements entered into by business entities in the context of free and understanding negotiation. *Nabholz Constr. Corp.* v. *Graham*, 319 Ark. 396, 892 S.W.2d 456 (1995); *Arkansas Kraft Corp.* v. *Boyd Sanders Constr. Co.*, 298 Ark. 36, 764 S.W.2d 452 (1989); *see also Hardeman* v. *Hass*, 246 Ark. 559, 439 S.W.2d 281 (1969).

When the indemnity contract at issue is viewed as a whole, it becomes obvious that it does not clearly and unequivocally provide that Potlatch will indemnify MoPac for all accidents caused solely by MoPac's negligence on all of the tracks at all times. The language agreeing to indemnify MoPac against its own negligence is limited to specific "hazardous facility" areas. For example, paragraph 3(c) applies to any movable appliance used by Potlatch in loading and unloading railroad cars, 3(d) applies to a traveling crane and a hoist, 3(e) applies to a gate across the switch, and 3(g) applies to Potlatch's switch engine. The general indemnity provision is contained in paragraph 4, and it provides for equal liability in event of joint or concurring negligence. The trial court, in the oral statement granting the judgment notwithstanding the verdict, ruled that paragraph 3(b) of the contract provides complete indemnity for any and all liability. The ruling was incorporated in the written order granting the judgment. The ruling was in error. Paragraph 3(b) provides that Pot-

latch will own and operate a rotary car dumper "and appurtenances thereto" on the dumper track and that it will indemnify MoPac for accidents "caused by" or "connected with the existence, construction, maintenance, use, operation or removal of *said dumper* or the operation of engines, cars, or trains over said tracks and upon, over, beneath, or *adjacent to said dumper.*" (Emphasis supplied). The paragraph does not purport to provide indemnity for unrelated areas or upon unrelated tracks.

At trial, the court correctly ruled that it was for the jury to decide whether the accident occurred adjacent to, or on the appurtenances of, the dumper, and there was substantial evidence to support the jury's decision that the track for unloaded cars, where the accident occurred, was not appurtenant to the dumper, nor was it adjacent to the dumper. Jack Gressette, who supervised the design and construction of the Potlatch facility, testified that the appurtenances to the dumper were the concrete pit, the walkways, the handrails, and the control room. The accident occurred on the unloaded car track 400 yards away from the dumper. Therefore, there was substantial evidence from which the jury could have concluded that the accident did not occur on the appurtenances to, or at a place adjacent to, the dumper.

We reached a similar conclusion in *Missouri Pacific R.R.* v. *Southern Cotton Oil Div.*, 238 Ark. 421, 390 S.W.2d 113 (1965). In that case, a brakeman for MoPac was injured when he fell into a minnow pool on Southern Cotton Oil's property. *Id.* at 422, 390 S.W.2d at 114. MoPac sued for indemnity, claiming that the area was within the clearance area of the contract. The minnow pool itself lacked 2 3/4 inches of being within the area contracted by the shipper to be free of obstacles. *Id.* at 423, 390 S.W.2d at 115. We held that a question of fact was presented as to whether scraping the grass around the sides of the minnow pool constituted a violation of the free clearance agreement, and upheld the finding that Southern Cotton was not liable to indemnify MoPac. *Id.* at 423-24, 390 S.W.2d at 115.

MoPac urges that, as a matter of law, the accident took place "in [a] manner caused by, resulting from, incident to, or connected with the existence, construction, maintenance, use, operation or removal" of the dumper. It contends that leaving the unloaded cars on the unloaded car track was "essential" to the

operation of the dumper, as the purpose was to provide a place to release and store cars that had been dumped so the next car could be placed in the dumper.

The indemnity agreement does not provide for indemnity for accidents or occurrences that take place on the unloaded car track. Rather, it provides for indemnity for incidents occurring "adjacent to" or on "appurtenances of" the dumper, and it describes the dumper and its location on the dumper track and then sets out the obligations of the parties in relation to the dumper. There is no unequivocal expression to extend the protection past the dumper track, past the operation of the dumper, to the coupling of the empty cars 400 yards away on another track.

MoPac also contends that, as a matter of law, the accident occurred "adjacent to" the dumper. For the reasons previously set out, it was a question of fact whether the accident occurred "adjacent" to the dumper.

■ In summary, the trial court erred in ruling that, as a matter of law, MoPac was "entitled to complete indemnity from defendant for any and all liability, in any manner, caused by or resulting from incident to or connected with the movement or attempted movement of cars" under paragraph 3(b) of the indemnity agreement. Paragraph 4 of the agreement does provide for equal liability if there is joint or concurring negligence, but, for the reasons already stated, there was substantial evidence that Potlatch was not negligent.

Potlatch advances two other assignments of error, but its counsel stated in oral argument that they were alternative arguments only. Since we reverse on the first assignment, we do not reach the alternative assignments. In summary, on direct appeal we reverse the grant of the judgment notwithstanding the verdict and reinstate the jury verdict.

■ We now turn to MoPac's cross-appeal. It first argues that if we reverse the judgment notwithstanding the verdict, we should not reinstate the verdict; rather, we should order a new trial. We decline to do so. Plaintiff MoPac had the burden of proof, and the jury found that it did not meet that burden. A trial court is not to substitute its judgment for that of the jury and set aside a verdict. *Clayton* v. *Wagnon*, 276 Ark. 124, 633 S.W.2d 19 (1982).

Certainly, we will not substitute our judgment for that of the jury by granting a new trial.

MoPac next argues that the trial court erred in refusing to ask on *voir dire* whether any potential juror had an interest in, or connection with, liability insurance companies and the insurance company acting as Potlatch's agent in this case. The facts underlying the argument are as follows. Potlatch moved *in limine* to exclude any reference to or evidence of insurance coverage. At a hearing before trial, MoPac argued that it should be able to ask if any juror had a connection with the Fireman's Fund Insurance Company. The court granted the motion *in limine* and stated that Potlatch was self-insured and did not have liability insurance in the usual sense; that it only posted $500,000 with Fireman's Fund which would be the first $500,000 paid on a judgment, if any, and anything over that would be paid by an insurance company that was solely owned by forest companies whose stock is not open for purchase to the general public. The trial court additionally stated that *voir dire* about insurance under these circumstances would likely mislead the jury, as Fireman's Fund would not actually be paying the $500,000. The trial court concluded that it would not be a good faith question.

If a party's counsel acts in good faith, he may, in one form or another, question prospective jurors with respect to their interest in or connection with insurance companies. *Fuller* v. *Johnson*, 301 Ark. 14, 781 S.W.2d 463 (1989). The good faith requirement is that counsel, in asking questions about insurance, must be justified in the belief that an insurance company has an interest in the outcome of the litigation. *Dedmon* v. *Thalheimer*, 226 Ark. 402, 290 S.W.2d 15 (1956). Insurance is not to be unnecessarily injected into a case. *DeLong* v. *Green*, 229 Ark. 100, 313 S.W.2d 370 (1958). Here, the trial court determined that because the $500,000 being held by Fireman's Fund was actually Potlatch's money, Fireman's Fund did not have an interest in the outcome, and that unnecessarily injecting insurance into *voir dire* would likely mislead the jurors into believing that Potlatch was insured. The determination of whether counsel has acted in good faith is "largely in the discretion of the trial court," and we will not reverse a trial court's ruling on that question unless there was an "abuse of discretion." *Superior Forwarding Co.* v. *Sikes*, 233 Ark. 932, 936–37, 349 S.W.2d 818, 821 (1961)

(*see* cases and article cited therein). We cannot say the trial court abused its discretion in this case.

MoPac next contends that the trial court erred in allowing introduction of defendant's Exhibit Nos. 17 and 18 and in refusing to allow MoPac to present evidence as to the prior activities of Potlatch as rebuttal evidence to defendant's Exhibit Nos. 17 and 18. Potlatch's Exhibit No. 17 is a memo from Leon Wilson, a MoPac employee who investigated the accident, to Kim Luther, former counsel for MoPac. It says that at one time Potlatch had a problem with broken pins, but that the problem had been cleared up. Potlatch's Exhibit No. 18 was a memo from Wilson to Mr. R.E. Alexander of MoPac. It said that Wilson had originally thought that Potlatch employees had let an empty chip car go and caused the accident, but that Higley had stated that a car hit him from the north, which was the direction of the MoPac engine. The memos were read to the court by David Dwerlkotte, an employee in the Operating Department of Union Pacific for MoPac. The memos were introduced after Dwerlkotte said that he was unaware of any problems on the empty chip track or any maintenance problems having anything to do with Higley's injury.

██ MoPac objected to introduction of the exhibits on the ground they were double hearsay. The parties had stipulated to the business record authentication requirement. The court correctly overruled the objection. The documents were not hearsay because Leon Wilson was an employee of MoPac; thus, they were statements against interest by a party. Rule 801 of the Arkansas Rules of Evidence provides that a statement is not hearsay if it is an admission by a party-opponent. A.R.E. Rule 801(d)(2). This includes a statement made by an "agent or servant concerning a matter within the scope of his agency or employment made during the existence of the relationship." A.R.E. Rule 801(d)(2)(iv).

██ ██ MoPac also argues that it should have been allowed to bring in testimony by Potlatch employees Maurice Bell and David Dwerlkotte that, as a result of a disagreement with MoPac crews, Potlatch crews intentionally set off cars with both couplers closed about six months to one year prior to Higley's accident. Bell's testimony was from his direct knowledge, but Dwerlkotte's testimony would have come from information given him by Higley. The proffer of Bell's testimony had nothing to do with

broken pins and was not relevant to rebut the evidence offered by Potlatch on fixing the broken pins. A.R.E. Rule 401. Relevance of evidence is within the trial court's sound discretion, subject to reversal only if an abuse of discretion is demonstrated. *Turner* v. *Lamitina*, 297 Ark. 361, 761 S.W.2d 929 (1988). Dwerlkotte's testimony was hearsay, as it was based on a statement made by Higley. A.R.E. Rule 801(c). Thus, the arguments are without merit.

MoPac's final argument on cross-appeal concerns Potlatch's use of a video tape showing how the dumper functions. MoPac objected to the video tape because it depicted a chip track with only one car, and there were more than twenty cars on the track at the time of the accident. Potlatch responded that it was not offering the video as a reenactment of the accident, but only to show the jury how the dumper functioned. The court viewed the tape and found it admissible to show how the dumper operated.

 Both parties agree that the original occurrence need not be duplicated for a videotape to be admissible as a demonstration. *See Carr* v. *Suzuki Motor Co.*, 280 Ark. 1, 655 S.W.2d 364 (1983). The real question is whether an exhibit such as this one will aid the jury or confuse it. *See Rayner* v. *Stauffer Chemical Co.*, 585 P.2d 1240 (Ariz. App. 1978). In *Carr*, cited by MoPac, the video tape was, as in this case, offered as a demonstration and not as a reenactment. *Id.* at 2, 655 S.W.2d at 365. It showed a professional motorcycle driver riding a motorcycle. We held that it was error to admit the video, because the professional driver could mask any deficiency in the operation of the motorcycle and, in doing so, mislead the jurors. *Id.* at 4, 655 S.W.2d at 365. There were no allegations here that the number of cars on the track caused the accident. There is nothing about the number of cars on the track which would confuse the jurors about the functioning of the dumper. Thus, the trial court did not err in allowing the video tape to be shown.

Reversed and verdict reinstated on direct appeal; affirmed on cross-appeal.

BROWN, J., not participating.

Special Justice BEVERLY ROWLETT joins in this opinion.