

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV–17–41

DEBBIE JEAN BROWN AND LOUISE
PILZ

APPELLANTS

V.

UNITED PARCEL SERVICE, INC.

APPELLEE

**OPINION DELIVERED:** OCTOBER 4, 2017

APPEAL FROM THE PULASKI
COUNTY CIRCUIT COURT,
SIXTH DISTRICT
[NO. 60CV-13-4093]

HONORABLE TIMOTHY DAVIS
FOX, JUDGE

AFFIRMED

## ROBERT J. GLADWIN, Judge

Debbie Jean Brown and Louise Pilz filed suit against their employer United Parcel

Service, Inc. (UPS), for violations under the Arkansas Civil Rights Act (ACRA).[1]  Ark.

Code Ann. §§ 16-123-101 to -108 (Repl. 2016).  Following a jury trial in the Pulaski

County Circuit Court, a verdict was rendered in favor of UPS.  Appellants argue on appeal

that the trial court erred in denying their motion for directed verdict and in rejecting their

proposed jury instruction on UPS's "honest belief" defense.  We affirm.

Brown filed her complaint against UPS on October 16, 2013, alleging that she had

been subjected to gender discrimination and retaliation at her workplace.  She claimed that

UPS had violated the ACRA by retaliating against her, harassing and intimidating her, and

refusing to promote her.  On October 11, 2014, Brown's complaint was amended and

---

[1]Along with UPS, Stan Roux, Kim Loftin, and Todd Hyden were named as
defendants, but claims against them were nonsuited at trial, and no further claims have been
filed against them.

supplemented to add Pilz's allegation that she had been denied the same benefits as males who work for UPS and had been denied equal pay in violation of the Arkansas Equal Pay Act. Both appellants sought general and punitive damages. UPS responded, denying appellants' allegations.

At trial, Naaman Kelley, Jimmy McClure, Cedric Williams, Quentin Goodwin, and Dante Tippin testified on behalf of appellants. Naaman Kelley, a twenty-seven-year employee with UPS working in Little Rock as division manager, testified that Brown is a female part-time supervisor for UPS in Little Rock. He said that UPS had not been very consistent with respect to its promotional process during his tenure. He said that Brown is an outstanding person, tells the truth, and is qualified for "any job in that hub." He explained that MAPP (Management Assessment and Promotion Process) is similar to an aptitude test. He said that if UPS follows its policy, the MAPP test must be passed in order for anyone to be considered for a full-time slot. He said that he had been told by Charlotte Westmoreland, who had previously worked in the human-resources department, that Brown had passed the MAPP test. He said that if Brown had failed it, there should be a record. He testified that of all the supervisors that had been working "out there," very few approached or exceeded Brown's qualifications. He said that over the last four or five years, Brown had not passed the MAPP test, and he had told her several times to take it again. He said that he did not believe that Brown was being discriminated against, retaliated against, or treated unfairly. He thought that the promotional practice was being unfairly administered. He stated that to be qualified for a promotion one must pass the MAPP test and that Brown had not, to his knowledge, passed it under his tenure. Even though he was

told she had passed it prior to his tenure, he did not go and look at the actual document. He said that Brown had not met the requirements for promotion during his tenure.

Jimmy McClure testified that he is the area human-resources manager in Arkansas for UPS and before that had worked at the Little Rock hub. He said that Brown is a good employee who knows her job. He thought Brown could cover for a full-time supervisor and that it was not uncommon for a part-time supervisor to do so. A part-time supervisor is guaranteed 27.5 hours a week. He said that he knew of some of Brown's complaints but could not remember specific conversations with others in management. He also knew that Brown had engaged in protected activity by instigating a lawsuit and that meant she should not be retaliated against. He thought that Brown could "possibly" be a full-time supervisor in the absence of the MAPP requirement. He said that he did not know if Brown had the skill set to perform the job function of full-time supervisor.

McClure said that Pilz works in the Texarkana facility as a part-time supervisor. He said Pilz had passed MAPP, and he was aware of her claim that she should have been promoted. He said that Pilz was a good, loyal employee at UPS. He acknowledged that James Thompson had been promoted in Texarkana and that Thompson had a lot of experience driving a package truck. He said that Pilz did not have driving experience and that there is a preference for driving experience in the position of on-car supervisors.

Cedric Williams testified that he is the twilight hub manager at UPS in Little Rock and that Brown works for him in the hub. He said that he was testifying under subpoena and that he supports Brown's position in this case. When he took his current position, Brown talked to him a lot about how to run the hub. He said that Brown could be a full-

3

time supervisor "without a doubt." He said Brown always arrived around two hours before her shift started and worked off the clock. He said that he was "talked to" about having a conversation with Brown to tell her to stop working off the clock, but he never told her to quit coming in early. He said that Brown worked full-time supervisor's hours.

Quentin Goodwin testified that he has worked at UPS for nineteen years and that he had supervised Brown in 2007–2008. He said that he could not name a more qualified person in hub operations than Brown. He said that Todd Hyden knew that Brown had been coming in early back in 2007–2008 and that Brown deserved to be a full-time supervisor based on her skills and ability. He said that Brown was more qualified than Antonio Rich, who is a hub supervisor. He said that he had worked in Texarkana in 2014 and that Pilz was a go-getter. He said that Kim Loftin in Texarkana had needed assistance, and Goodwin had helped him "with some rides." He said that there is a preference for full-time supervisors to have driving experience, but a preference is not the same as a requirement. Texarkana is one of the most complicated centers in the district. Goodwin said that because there are all kinds of operational concerns in the Texarkana hub, "we'd like to have full-time supervisors with driving experience." He said that he had told Brown to stop working off the clock in 2008. He said that he had been told that Brown had passed MAPP, but he did not have access to her scores.

Dante Tippin testified that he is a business manager with UPS and had been in Texarkana from September 2004 until April 2008 as an on-road supervisor. He said that Pilz was hired after he began there, and she was a part-time package-center supervisor. It was his opinion that driving experience would be helpful in a supervisor's job.

4

SLIP OPINION

Louise Pilz testified that she performs full-time supervisor duties, but she has never made more than $38,000 a year at UPS. She said that Kim Loftin was her center manager for a year and a half. She said that she began work as a temporary employee in June 2005 and that after two months she took a management test, passed it, and began working in September 2005 as a part-time supervisor. In November 2005, Pilz was made a permanent employee.

Pilz said that she performs the job of full-time supervisor in some areas and regularly exceeds thirty-three hours a week. She said that she works in the evenings and that there is not a full-time supervisor working at that time. She testified that she is sixty-five years old and loves her job. She said that she wants equal pay as a full-time employee and that she does not have any driving experience. She said that Kim Loftin had not given her an opportunity to get that training, and she had not asked him, or anyone, what she needed to do. She thought that after she had passed MAPP she was qualified and eligible to be a full-time supervisor or a full-time specialist. She claimed that no one ever told her that she needed driving experience. She said that Loftin had lied to her when he told her there was no opening for a full-time supervisor. She said that James Thompson, a driver from Fort Worth, got the position and that Thompson did not have any supervisory experience. She said that she felt like she had been stepped over for promotion because she is a female and that her hours were changed in retaliation for her not being able to go in to work early on two occasions. She applied for two on-car supervisor positions in 2014 and was not hired. Pilz also complained that she worked by herself at night with no way to lock the doors. She said that when the locks were replaced, the doors could only be locked from the outside,

which did not help her to feel more secure. She said that other than the friction with Kim Loftin, she had been treated fairly by everyone at the Texarkana center.

Raymond Battle testified that he has been with UPS since 1976 and is the division manager for three-quarters of Arkansas. He is responsible for the Texarkana center, and he was the division manager in Texarkana in 2013 and 2014. He said that he relied on Kim Loftin's recommendation in filling the positions in Texarkana, that he had never considered Pilz for any promotion, and that Thompson had driving experience and no management experience. He said that lack of driving experience would not disqualify someone from an on-car supervisor job but neither would lack of managerial experience. He said that he relied on Loftin to make recommendations for those jobs. He said that even if Pilz had been in the selection pool, he would have picked the driver with the nine- to ten-year driving experience. He said that he did not hire Pilz for the second vacancy because he needed someone with driving experience. He said that the females in his division in Texarkana are given equal opportunities for career advancement.

Yakisha Sherman testified that she is a full-time twilight-retention and training supervisor for UPS in Little Rock and had previously been in human resources as a part-time supervisor. She said that she thought Brown was a great employee, could do a full-time supervisor's job, and had some "absenteeism." Sherman said that she had initiated MAPP for herself in 2008. She said that she was required to take a couple of tests and undergo a panel interview, and then she was told she was MAPP qualified, which was a necessary step for promotion. She said that there had been no one who had been promoted

from part-time to full-time who had not gone through that process. Full-time supervisors go to presort meetings and part-time supervisors do not.

James Kent Hardy testified that he has worked at UPS for thirty-five years and is an on-road supervisor. He knew Brown when she had worked for him as a part-time supervisor in 2002, 2003, or 2004. He said Brown was "excellent." He said that one had to have initiative to climb the ladder at UPS and that a manager's support was also needed. He did not have reason to believe that either Pilz or Brown had been treated differently based on their gender or had been retaliated against.

Debbie Jean Brown testified that she is sixty years old and has worked at UPS for nineteen years. She said that she is a part-time supervisor but had fulfilled every role except float control because "they said I was too valuable on the floor to give up." She believes that she has been passed over for promotion, and she named Yakisha Sherman, who was promoted, as having less experience than she does. She also named five men in management who knew she had "held full-time positions." She said that she had been working off the clock, knew it was an integrity violation, but that if she had not done it, "our sort would not be able to run." She said that she is a team player. She said that Antonio Rich had been promoted in 2010 or 2011 after they had been told not to bother putting in a letter for promotion. Based on that, she made a complaint on UPS's 1-800 number and called Stan Roux. She also described an incident in which Todd Hyden called her "useless as a used car salesman." She said that Hyden had done nothing but belittle her, call her illiterate, and that because of the way she had been treated, she missed a lot of work due to stress. She said in part:

SLIP OPINION

It's who you know, not what you know gets you a job out there, gets you a promotion. There's nothing fair about it. I think it's retaliation because I'm not a man; I am a white-American-Indian female, outspoken; and I do not play games.

Brown said that she had passed the MAPP test in 2008, but she had not seen a document reflecting that. On cross-examination, she said that she knew MAPP was the first step in the process to becoming promotion eligible, but she said that no one had told her about MAPP until it had been "out over a year." She complained that "they did not communicate out there like they should." She testified that the UPS manual explains the MAPP process, which contains four parts. She understood that after completing the four steps, she would be placed into a pool for consideration for promotion. She said that she was told that she did not pass the test in 2011, but she did not believe that she had failed it. She said that she never proceeded to the fourth step, which is the panel interview. Therefore, she had never gone through the four steps to be placed into the pool for consideration. She said that she did not know how many times she had initiated the MAPP process since 2008.

Stan Roux testified that he is the director of human resources at UPS for the Central Plains District. He has had discussions with Brown and had looked into whether she was eligible for promotion. He said that he had good reason to believe that she did not pass the MAPP test.

After these witnesses testified, UPS moved for a directed verdict on each of appellants' claims, and the motion was denied. However, the trial court granted UPS's motion for a directed verdict on the issue of punitive damages.

Kim Loftin, Todd Hyden, Stan Roux, Charlotte Westmoreland, and Jimmy McClure testified on behalf of UPS. Loftin testified that he has worked for UPS for twenty-eight years and is currently at the Fort Smith facility, but he had worked as business manager in the Texarkana facility from April 2013 until September 2014. He said that Pilz had worked for him and that she had not performed the job duties of a full-time, on-road supervisor. He distinguished Pilz's job from full-time supervisory jobs. He said that there had been two vacancies for on-road supervisor positions in Texarkana in 2014. The first job was filled by James Thompson. The job was posted through the MCO (a UPS on-line job posting) process after it had been determined there was no one in Texarkana who could fill the job. He said that they had been looking for someone with extensive on-road experience. He denied trying to hide the vacancy from Pilz and said that he did not remember talking with her about the opening. He said that Pilz is a great worker and that he had never had a problem with her. He said that the second job opening was filled by someone with on-car supervisor experience. He said that he had changed Pilz's hours because he was implementing new controls. He said that he did not decide on which locks needed to be different or who needed access to certain areas; the security department made those decisions. He did not remember Pilz complaining about the door locks. He did not have an issue with Pilz, and he thought she was a good worker. He said that he did not consider gender in making his referrals.

Todd Hyden testified that he works as a division manager for UPS and had been at Little Rock for nine and a half years. He discussed the operations of the Little Rock hub and the job duties of various positions. He said that he was not aware of any other off-the-

clock issues since the one that had been addressed by UPS when a supervisor was asking workers not to record all their time. He said he did not consider gender in his promotions and that UPS had a policy against it. He identified a list of MAPP-qualified candidates dated December 28, 2010, and Brown's name was not on it. He said that he gets those lists in the regular course of business and that he had never seen Brown's name listed. He said that he had promoted women who had been MAPP qualified. He said that he did not remember calling Brown "useless as a used car salesman." He denied making the comment but said he had apologized to Brown because he would have been apologetic if she felt that he had made that comment. He said that he had no issues with Brown and that she had done a good job and is a good employee. He said that Brown had not been promoted because she had never been MAPP qualified.

Stan Roux testified that UPS has a policy prohibiting discrimination or harassment in the workplace. He also identified UPS's response to the lawsuit Brown had filed with the EEOC in 2010. Roux said that he had responded to the lawsuit by stating that Brown had never submitted a letter of interest or expressed interest in initiating MAPP. He said he no longer thought the statement he had made in the response was complete.

Charlotte Westmoreland testified that she works at UPS in Houston, Texas, and had worked in Arkansas for UPS for twenty-three years. When she worked in Little Rock, she was promoted from data-entry clerk to damage and over-good clerk, to preloader, to part-time supervisor, to package-car driver, and to full-time supervisor for the preload. She had taken a test to be qualified before she became a full-time manager, then she had to go through a panel interview. She said that this was "before MAPP." She testified to several

promotions following her position as full-time preload supervisor and said she had been the administrator of the MAPP process, ensuring that all the processes were completed. There had been a scoring sheet for each applicant who had applied for a management position. She identified a scoring sheet for Brown dated March 30, 2006, showing that Brown had completed an initial assessment and had passed, but she did not complete the process. Brown failed the initial assessment in 2007, and in 2009 she passed the initial assessment but did not complete the process because she did not take the AP test.

Jimmy McClure testified that MAPP has been replaced by MRE (Management Ready Evaluation), and there is currently a different process for part-time supervisors, but he could not recall its name. He did not know if passing a test was a requirement for part-time supervisor under the current MRE.

At the conclusion of the evidence, UPS renewed its motion for directed verdict on appellants' claims, and it was denied. Appellants moved for summary judgment as a matter of law on UPS's affirmative defense of "good faith belief," and that motion was also denied. Appellants objected to the "business judgment" jury instruction, which required UPS to present a good-faith belief to successfully defend against appellants' claims. The trial court overruled the objection, and the following jury instruction was given:

> In making a business decision, Defendants are only required to have a good-faith belief, created through a reasonable reliance on the specific facts known to them at the time the promotional decisions were made. When deciding Plaintiffs' motion claims therefor, the key inquiry is assessing whether the decisions to not promote, either was motivated by their gender or protected activity, or whether the decisions were made by Defendant's honest belief that Ms. Brown was not eligible for promotion, and Ms. Pilz did not have the driving experience needed to be an on-road supervisor in Texarkana. The key question is whether the decisions not to promote either Plaintiff was motivated by an honest belief.

Appellants proffered the above instruction with the additional language, "Defendant bears the burden of proving its good faith belief." Several other objections and rulings followed, but none are the subject of this appeal. After the jury deliberated, it found for UPS on each claim.

The ACRA provides citizens of this state legal redress for civil-rights violations of state constitutional or statutory provisions, hate offenses, and discrimination offenses. *See Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). The ACRA also seeks to prevent retaliatory conduct against those seeking its protection. *See id.* The Act unequivocally grants to qualified persons the right to be free from employment discrimination "because of gender." Ark. Code Ann. § 16-123-107(a)(1).

UPS identified the framework in Arkansas for reviewing gender-discrimination cases as follows:

> If the plaintiff can demonstrate that an illegitimate criterion was a motivating factor in the employment decision, the burden shifting formula set out in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), is applied. . . . If the plaintiff is unable to produce evidence that directly reflects the use of an illegitimate criterion in the challenged decision, the employee may proceed under the now-familiar three-step analytical framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this test, the burden of persuasion never leaves the plaintiff, but there is a shift in the burden to come forward with evidence: (1) the plaintiff must present a prima facie case consisting of four distinct elements; (2) the defendant must rebut the prima facie case by showing nondiscriminatory reasons for termination; and (3) the plaintiff must show the reasons are pretextual.

*Flentje*, 340 Ark. at 571, 11 S.W.3d at 537 (quoting *Stacks v. Sw. Bell Yellow Pages, Inc.*, 996 F.2d 200 (8th Cir.1993)).[2]

---

[2]*Flentje* involved an appeal of summary judgment granted in favor of an employer in a gender-discrimination suit under the ACRA. Because *Flentje* contained issues of first

On appeal to this court, appellants argue that the trial court erred in "denying [their] motion for a directed verdict on [UPS's] affirmative defense of good faith belief and instructing the jury on that defense." Appellants' second point on appeal is that, "even if an 'honest belief' instruction were appropriate, the trial court erred in rejecting [appellants'] proposed instruction, which made it clear that the burden of proof was on [UPS]." These arguments hinge on appellants' insistence that UPS bore the burden of proof at trial.

In support of their burden-of-proof argument, appellants urge this court to determine whether the jury's verdict for UPS is supported by substantial evidence. *ConAgra Foods, Inc. v. Draper*, 372 Ark. 361, 276 S.W.3d 244 (2008). The *ConAgra* court stated,

> Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *Crawford County v. Jones*, 365 Ark. 585, 232 S.W.3d 433 (2006); *Stewart Title Guar. Co. v. American Abstract & Title Co.*, 363 Ark. 530, 215 S.W.3d 596 (2005); *Ethyl Corp. v. Johnson*, 345 Ark. 476, 49 S.W.3d 644 (2001). Similarly, in reviewing the denial of a motion for JNOV, we will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. *Id*. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id*. It is not our place to try issues of fact; rather, we simply review the record for substantial evidence to support the jury's verdict. *Id*. In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id*. A motion for directed verdict should be denied when there is a conflict in the evidence, or when the evidence is such that fair-minded people might reach different conclusions. *See McMickle v. Griffin*, 369 Ark. 318, 254 S.W.3d 729 (2007) (citing *Wal-Mart Stores, Inc. v. Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991)).

*Id*. at 364, 276 S.W.3d at 247–48.

_____

impression under the ACRA—pregnancy-gender discrimination—the Arkansas Supreme Court reviewed federal decisions for persuasive authority on which to base its analysis.

13

UPS contends that the substantial-evidence standard is not strictly applied in cases like this one in which the appealing parties are also the parties with whom the ultimate burden of proof rests. UPS contends that as long as there is any evidence to support the jury's verdict in UPS's favor, regardless of whether the evidence is substantial, the verdict must stand.

> Where the sufficiency of the evidence to support a verdict is the issue on appeal, the standard of review is whether the verdict is supported by substantial evidence. Obviously in appeals from a verdict for the defendant the rule cannot always be read literally, as the defendant may have introduced little or no proof, yet the jury found against the plaintiff. It makes little sense in such cases for the appellant to argue the strict application of the rule, insisting that a reversal is required because the defendant's proof failed to meet the substantial evidence test. The evident fact is the plaintiff failed to convince the jury, or fact finder, of an essential element of proof. That seems to have been the case with this jury, it simply did not think the defendant was negligent, or that the plaintiff's injuries were proximately caused by the negligence, if any. Thus, the lack of substance is not with the defendant's proof, but with the plaintiff's. *See Morton v. American Medical International, Inc.*, 286 Ark. 88, 689 S.W.2d 535 (1985).

*Schaeffer v. McGhee*, 286 Ark. 113, 115, 689 S.W.2d 537, 539 (1985).

During oral argument before this court, UPS clarified its contention, claiming that it had the burden of producing a good-faith reason for declining to promote appellants; however, the burden of proof remained with appellants to establish their discrimination claims. We agree that the burden remained with appellants to provide sufficient proof of their claims. *See Flentje, supra.* However, even strictly applying the substantial-evidence standard of review and viewing the evidence and all reasonable inferences arising therefrom in the light most favorable to UPS, we hold that substantial evidence supports the jury's verdict.

The ACRA guarantees freedom from gender discrimination, including the right to obtain and hold employment without discrimination. Ark. Code Ann. § 16-23-107(a)(1) & (c); Ark. Code Ann. § 11-4-601. Appellants contend that they need not prove intentional employment discrimination, merely that they were injured by employment discrimination by an employer. However, appellants did not object to the jury instructions on the elements of their discrimination claims. Their failure to object operates as a waiver of their argument that the trial court erred in interpreting the ACRA to require that the element of intent be proved. *Delta Sch. of Commerce, Inc. v. Wood*, 298 Ark. 195, 766 S.W.2d 424 (1989).

Arkansas Code Annotated section 16-123-103(c) provides that a defendant in a discrimination case may avoid liability by showing that his or her actions were based on legitimate, nondiscriminatory factors and not on unjustified reasons. Appellants argue that the federal "honest belief" defense is broader than the limited defense provided under the Arkansas statute. They acknowledge and cite *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012), which rejected a modified "honest belief" rule, holding that a plaintiff must prove the employer acted with intent in an employment-discrimination case. The court stated that "[e]ven if the business decision was ill-considered or unreasonable, provided that the decisionmaker honestly believed the nondiscriminatory reason he gave for the action, pretext does not exist." *Pulczinski*, 691 F.3d at 1003. Nevertheless, appellants urge this court to follow the Sixth Circuit's requirement that a determination be made whether the employer made a reasonably informed and considered decision. *See Smith v. Chrysler Corp.*, 155 F.3d 799 (6th Cir. 1998).

15

Appellants contend that the question before this court is whether any version of the "honest belief" defense is available under Arkansas law and, if so, whether there was any substantial evidence to support an "honest belief" instruction. Appellants claim that the defense is not available and that an Arkansas employer can avoid liability only by demonstrating that its actions were based on legitimate, nondiscriminatory factors. They claim that the defense does not extend to a mistaken belief that the employer's actions were based on a legitimate, nondiscriminatory factor. They conclude that reading an "honest belief" instruction into an employment-discrimination case in Arkansas is contrary to the statute. Relying on the Sixth Circuit's requirement that an employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made, *Smith*, *supra*, appellants argue that there was no substantial evidence to support the "affirmative defense" of having a legitimate, nondiscriminatory reason. They argue that there was no evidence of a reasonably informed and considered decision and no suggestion of any particularized facts before the employer made the decision.

Appellants point to the conflicting evidence regarding whether Brown was qualified for a promotion based on the MAPP procedure. There was testimony that she had been told she had passed the MAPP test, and there was testimony that she had not. Appellants argue that the jury should have been asked whether Brown had actually passed the MAPP test. They contend that, under the honest-belief instruction given by the trial court, the question became whether UPS could have reasonably believed that Brown did not pass the MAPP test. They contend, therefore, that the error was prejudicial. In regard to Pilz, appellants claim that there was no dispute that she had passed the MAPP test; but she was

SLIP OPINION

never considered for a promotion. Appellants argue that UPS failed to articulate what honest belief they relied on when they failed to promote Pilz.

Appellants' argument that the ACRA does not recognize an "honest belief" rule is incorrect. We can look to federal and state courts' analyses of the ACRA's federal counterpart as persuasive authority. *See* Ark. Code Ann. § 16-123-105(c) (providing that when construing the ACRA, a court may look for guidance to state and federal decisions interpreting Title VII for persuasive authority). An honest belief has been held to be a legitimate, nondiscriminatory reason under the ACRA in federal courts. *Gibson v. Am. Greetings Corp.*, 670 F.3d 844 (8th Cir. 2012); *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782 (8th Cir. 2011); *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855 (8th Cir. 2009).

Further, there was sufficient evidence for the jury to be charged with an "honest belief" instruction. The decision makers involved in the promotion decision testified that they honestly believed appellants were either ineligible for promotion or less qualified than other candidates. It was within the jury's purview to consider the credibility of witnesses and the weight and value of their testimony. *Potlatch Corp. v. Missouri Pa. R.R. Co.*, 321 Ark. 314, 902 S.W.2d 217 (1995). Appellants failed to offer sufficient evidence to infer that discriminatory animus was the real reason for the decision not to promote. *Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC*, 471 F.3d 843 (8th Cir. 2006), abrogated on other grounds by *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

In their second point on appeal, appellants argue that even if an "honest belief" instruction had been appropriate, the trial court erred in rejecting their proposed instruction,

17

which made it clear that the burden of proof was on UPS. Appellants argue that "honest belief" is an affirmative defense. The statute provides that a defendant avoids liability by showing that his actions were based on legitimate, nondiscriminatory factors and not on unjustified reasons. Ark. Code Ann. § 16-123-103(c). Thus, appellants urge this court to hold that the jury should have been instructed that UPS had the burden of proof on this issue.

We note the following standard of review:

> A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Barnes v. Everett*, 351 Ark. 479, 95 S.W.3d 740 (2003). We will not reverse a circuit court's failure to give an instruction unless the court abused its discretion. *See Belz–Burrows, L.P. v. Cameron Constr. Co.*, 78 Ark. App. 84, 78 S.W.3d 126 (2002). When a model instruction is applicable in a case, it shall be used unless it does not accurately state the law. *See, e.g.*, *Taylor v. Riddell*, 320 Ark. 394, 896 S.W.2d 891 (1995). Jury instructions are not to be viewed in isolation but are to be considered as a whole to determine whether the circuit court correctly instructed the jury. *McGraw v. Weeks*, 326 Ark. 285, 930 S.W.2d 365 (1996); *Long v. Lampton*, 324 Ark. 511, 922 S.W.2d 692 (1996).

*Armstrong Remodeling & Constr., LLC v. Cardenas*, 2012 Ark. App. 387, at 10, 417 S.W.3d 748, 755.

We hold that the "honest belief" rule is not an affirmative defense under Ark. R. Civ. P. 8(c); it is simply a rule. *See Pulczinski, supra*. It was appellants' burden to prove an adverse employment action motivated by intentional discrimination. The proposed language improperly shifts the ultimate burden of proof to UPS. *See Torgerson, supra*; *Flentje, supra*. As set forth above in our discussion regarding the standard of review, because we decline to shift the burden of proof, we reject appellants' argument that the jury should have been instructed to do so.

Affirmed.

HARRISON and KLAPPENBACH, JJ., agree.

*Sutter & Gillham, P.L.L.C.*, by: *Luther Oneal Sutter*; and *Baker & Schulze*, by: *J.G. "Gerry" Schulze*, for appellants.

*Waller Lansden Dortch & Davis, LLP*, by: *John E.B. Gerth* and *Aron Z. Karabel*; and *Quattlebaum, Grooms & Tull PLLC*, by: *E.B. Chiles IV*, for appellee.