Youvanna STULL, as Administratrix of the Estate
of Windy Kay STULL, Deceased, and Individually
*v.* James M. RAGSDALE

81-75                                              620 S.W. 2d 264

Supreme Court of Arkansas
Opinion delivered July 6, 1981
[Rehearing denied September 21, 1981.]

*Ray & Donovan*, for appellant and cross-appellee.

*Butler, Hicky & Hicky, Ltd.*, for appellee and cross-appellant.

Frank Holt, Justice. This is an appeal from a judgment in which the trial court awarded only the funeral expenses to the estate of the deceased in a wrongful death and survival action. The court disallowed any recovery to the deceased's parents for mental anguish by imputing the negligence of the mother, apportioned by the jury at 75%, to the father.

The Stulls' four year old daughter Windy was killed when she was struck on the highway in front of her home by a truck driven by appellee. Mrs. Stull had put her two small children down for a nap shortly after lunch and after they fell asleep she also fell asleep on the couch with them. Her husband was away at his regular employment. She was awakened by a truck driver who told her a child had been killed on the highway. The child, Windy, had crossed the highway to the Stulls' mailbox and was returning when she was struck. Appellee testified that when he first saw Windy she was standing at a mailbox, facing it, with her back to the highway. She turned her head and looked his way, then looked the other direction, from which another truck was approaching. He thought she had seen both trucks. He let off the gas and was slowing down, or coasting, having moved over a little towards the centerline, watching her. When he got between six and ten feet from her she sprinted onto the highway and into the side of his truck as he cut to the left in an effort to avoid hitting her. Mrs. Stull, individually and as administratrix, brought this action.

The issues were submitted to the jury on interrogatories. The jury apportioned 25% negligence to appellee and 75% to Mrs. Stull. The jury awarded each parent $49,210 as damages for mental anguish. Funeral expenses of $1,578.31 were found in favor of the estate. Because Mrs. Stull was

found responsible for over 50% of the negligence, there could be, the court held, no recovery by her nor Mr. Stull.

The first issue raised on appeal is whether the court erred in holding that negligence of one parent, as here, is imputed to the other so as to bar recovery for mental anguish by the other parent. The majority of non-community property jurisdictions deciding this issue have held that where the negligence of one parent combines with the act of a third person, as here, to cause injury to the parent's child that parent's negligence is not imputed to the other parent. However, there are numerous jurisdictions which hold to the contrary. For a summary of these opposing views, see Anno., 66 ALR 2d 1325; 2 Speiser, Recovery for Wrongful Death (2d) § 5.9; 494A Restatement of Torts (Second); 65A C.J.S. *Negligence* § 159 (1966); Henry Woods, Comparative Fault § 9.5 (1978); Schwartz, Comparative Negligence § 13.4 (1974); 67A C.J.S. *Parent and Child* § 145 (1978).

Here in support of her argument that her negligence should not be imputed to her husband appellant argues that we have held that the negligence of a parent is not imputed to the child, *Miles* v. *St. Louis, I.M. & S. Ry. Co.*, 90 Ark. 485, 119 S.W. 837 (1909); that the negligence of a parent is not imputed to a child's estate, *Nashville Lumber Co.* v. *Busbee*, 100 Ark. 76, 139 S.W. 301 (1911); and that the negligence of one spouse is not imputed to the other in a situation involving personal property, *Wymer* v. *Dedman*, 233 Ark. 854, 350 S.W. 2d 169 (1961), and *Willingham* v. *Southern Rendering Co.*, 239 Ark. 858, 394 S.W. 2d 727 (1965). However, there is a community of interest between the husband and wife in regard to the care and supervision of their children. As stated in *Darbrinsky* v. *Pennsylvania Co.*, 248 Pa. 574, 94 A. 269 (1915):

> [W]hile the family relation exists, each parent at all times impliedly authorizes the other to act for him or her in the common care and control of their children, so that each becomes responsible for the acts of the other in that respect, and this implied authority does not rest upon the legal fiction of the unity of husband and wife, but is founded upon the family relation.

Some jurisdictions which hold one spouse's negligence, as here, is imputed to the other reason that when the recovery will not go to pay specific expenses incurred as a result of the accident, the realities of the situation are that the negligent parent will undoubtedly share or jointly benefit in the full recovery by the other spouse, in spite of what may be substantial negligence on his or her part and thus benefit or profit from his or her own wrong.

The purpose of our comparative negligence statute is to distribute the total damages among those who caused them. *Walton v. Tull*, 234 Ark. 882, 356 S.W. 2d 20 (1962). For this reason we believe that to deny recovery altogether would be far too harsh, just as requiring the defendant to pay 100% of the damages in the circumstances here is also unjust. Therefore, in a wrongful death action in which one parent is found negligent, as here, we believe the better result would be to permit recovery of damages by reducing the award of damages to the non-negligent parent by that amount of negligence attributed to the other parent. Such a rule recognizes the majority view that an innocent beneficiary should be entitled to recover damages. Accordingly, Mr. Stull's award of $49,210 should be reduced by 75%, the negligence attributed by the jury to Mrs. Stull. Stated another way, he should be allowed to recover to the extent of the negligence of appellee only, i.e., 25%, and not for his wife's negligence. Consequently, Mr. Stull's recovery stems only from the fault or the degree of negligence of the appellee, driver of the truck. It follows that the jury's award should be reduced to $12,302.50. The judgment, being based upon interrogatories or a separate verdict, is so modified and affirmed. See *Womack v. Brickell*, 232 Ark. 385, 337 S.W. 2d 655 (1960).

The next point asserted for reversal is that the judge erred in refusing to give an instruction requested by appellant. The trial judge did give the first part of AMI 901 (b), concerning the duty of a driver to keep his vehicle under control. However, he refused to give the second part of that instruction, regarding the duty to have the vehicle under such control as to be able to check its speed or stop it, if necessary, to avoid damage. We note that neither the request

for the instruction nor the court's ruling is abstracted. We have often held that where the appellant does not abstract a material part of the record necessary to decide the issue, we will affirm under Rule 9 (e) (2) of the Rules of the Supreme Court and Court of Appeals. See *Collier* v. *Hot Springs S & L Ass'n*, 272 Ark. 162, 612 S.W. 2d 730 (1981). Furthermore, the court had granted a motion for a directed verdict on the allegation in the complaint that appellee failed to slow his vehicle to such a speed that would enable him to be able to stop should the child attempt to cross the road. In doing so, the trial judge asked the appellant's attorney what his position was on the motion for directed verdict on this allegation, to which the attorney responded, "I'm not real concerned about it, Your Honor, really." Thus, although this allegation was apparently based upon AMI 605 and not 901 (b), it is so related that the waiver of objection to the directed verdict on this point and the subsequent directed verdict on the issue support the trial judge's denial to give this instruction. We find no prejudicial error.

It is also urged that it was error for the court to strike that part of the complaint asking for loss of future earnings and/or net accumulation of the estate had the deceased lived a normal life expectancy. Appellant admits "such recovery is normally not permitted in Arkansas and is not included in Arkansas Model Jury Instructions." He does not cite any persuasive authority for such a recovery for the benefit of the estate in Arkansas, candidly admitting that an annotation at 76 ALR 3d 123 does not include Arkansas cases in those cases cited which permit such a recovery. Further the jury was allowed to consider and found no loss of services of the minor in this action, as permitted by AMI 2216. Appellant has demonstrated no prejudicial error.

Appellant next contends it was error to not permit him to argue to the jury in closing that the assessment of such damages pursuant to an interrogatory is not the same as rendering a verdict for the defendant for that amount. We find no error. The note to AMI 2102 states that this instruction is not to be used when the case is submitted on interrogatories. Also, we have held it is reversible error to inform the jury of the effect of its answers on the ultimate

liability of the parties in a case submitted, as here, on interrogatories. See *International Harvester Co.* v. *Pike*, 249 Ark. 1026, 466 S.W. 2d 901 (1971).

Neither do we find any merit in appellant's contention that the court erred in refusing to permit the appellant to offer testimony about the driving habits of the appellee for purposes of establishing damages for mental anguish. Suffice it to say that it appears this evidence was later introduced when objections were withdrawn, as observed by the court, about the admissibility of this and other evidence.

Finally appellant contends there was no substantial evidence from which the jury could find her guilty of negligence. We disagree. The evidence before the jury was that appellant had put her two small children down for a nap on the couch shortly after lunch and fell asleep herself. While she was asleep her daughter awoke, left the house, crossed the highway to the mailbox and was attempting to return when struck by appellee's truck. There was evidence that appellant considered herself at fault. There was also evidence that Windy had been seen unattended playing on the shoulder of the road on earlier occasions. Appellant's negligence was a fact question for the jury and there is substantial evidence to support its finding.

Appellee raises three points on cross-appeal. The first is that the jury verdict in favor of the father was excessive in that the proof of his mental anguish was weak. Under the facts of this case we do not believe the jury's award of $49,000 is so excessive as to shock the conscience of the court or demonstrate passion or prejudice. See *Moses* v. *Kirtley*, 256 Ark. 721, 510 S.W. 2d 281 (1974). Here there was evidence he missed 2 or 3 weeks of work because he was upset; when he was not working he and Windy were together "all the time"; looking at the scene of the accident upset him; they moved from the area about a year later; he took down the photographs of Windy because he could not look at them; he thought of her every day and dreamed of her. He would not talk about his daughter and told his wife to "hush" when she tried to talk about her. It has affected their marriage, their communication. He sometimes just sits at home, as his wife

testified, "upset, and I can just hear him mumbling over in his mind that he lost everything when he lost her."

Appellee also argues under this point that some of the jurors had sat on a recent case during the same term of court, which case was also submitted on interrogatories, and in which subsequent communication by the jury indicated they had not wanted the verdict there reduced by the percentage of negligence attributed by them to the plaintiff. Appellee contends there were 8 of these jurors qualified in this case, and he used all of his peremptory challenges to remove as many as possible but 4 remained. He states he then moved for a mistrial in chambers. None of this appears in the abstract. As previously noted, we affirm under such circumstances. Appellee also raises a statement made on voir dire by one of the panel, which statement, again, is not abstracted. It is impossible to tell how many jurors were removed by appellee's peremptory challenges, appellant contending it was only 2. A sufficient answer is, however, that appellee's argument is a subject which should be sufficiently determined upon voir dire of the jury.

Under this point is also raised the contention that the court erred in not first submitting to the jury the interrogatory on liability and then, if necessary in view of the answers to that interrogatory, submitting the interrogatory on damages. We find no error. We fail to see how this would have prevented the error appellee alleges occurred as a result of the jury's not knowing the effect of their appointment of damages upon the verdict.

The appellee also contends there was not a fair trial and his motion for mistrial should have been granted. The foreman of the jury inquired during the jury's deliberations if they found the defendant guilty of 60% negligence and gave a judgment of $100,000, would Mrs. Stull get 60% of that amount. The judge stated he could not answer that. The attorney surmised that the jury was tainted since some of these jurors had recently sat on the other case similar to this one, based on interrogatories, which resulted in a finding of damages in a lesser amount than that jury intended. Appellee further argues that here, after the verdict was read

and the jurors were dismissed, several of the jurors returned to the courtroom where they were questioned by appellant's counsel over the appellee's objections. The results of that questioning indicated the jurors had attempted to increase or inflate the award to the appellants to allow for what they thought would be only a 75% reduction of the award (approximately $100,000) so that the final award would be approximately $25,000 to each of the parents. The Uniform Rules of Evidence, Rule 606, provides that a juror may not testify as to any matter occurring during the deliberations or to the effect of anything on his or any other juror's mind influencing him. This testimony was clearly improper and cannot be considered. Further, the trial court has a wide latitude of discretion in acting on a motion for a mistrial and will not be reversed on appeal absent a manifest abuse of that discretion. *Dickerson Const. Co.* v. *Dozier*, 266 Ark. 345, 584 S.W. 2d 36 (1979). Certainly, there was no abuse of discretion by the court in denying appellee's motions for mistrial based upon his arguments that he was denied a fair trial.

The final point raised on cross-appeal is that testimony concerning the funeral bill was improperly introduced into evidence. It is argued that the bill was not paid by the estate nor by the parents, but by Mr. Stull's employer. However, Mr. Stull stated he is obligated to repay it. The only objection, when Mrs. Stull testified, was that the bill and not her testimony was the best evidence. Thereupon, she produced a paid receipt to which there was no objection made.

Affirmed as modified on direct appeal.

Affirmed on cross-appeal.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The majority has marched full speed ahead into the Nineteenth Century with this opinion. In the first place I fail to see how a mother who takes a nap with her child at noontime is negligent when the four-year-old child awakens and strays outside and into the street. Compounding the error of finding a sleeping mother 75% at fault when a speeding truck struck and killed her

daughter is to hold the father, who was away earning a living by the sweat of his brow, to be negligent through the action of his wife. If this is justice, then I am sure many people will hope to avoid it in the future or try to take their cases to the Court of Appeals.

The majority holds and cites Arkansas precedent to the rule that the negligence of a parent is not imputed to a child; the negligence of a parent is not imputed to the child's estate; and that the negligence of one spouse is not imputed to the other in a situation involving automobile damages. Both parties have an interest in the family automobile. Each spouse benefits if a third party restores damages inflicted upon the vehicle while being operated by the other spouse. I submit that no reasonable rationale should impute the negligence of one parent to the other for injuries to their child or its estate. Is an automobile more valuable than a child's life?

Since this is a case of first impression, we ought to follow the most just and reasonable theory in such cases rather than go to other jurisdictions and dig up old stale cases. We have been on the progressive and enlightened path in matters of imputing negligence in all other similar situations such as were mentioned above in this dissent. We are not using the same gauge if we refuse to impute negligence in a vehicle damage case and reject it in a personal injury or death case. The majority refers to *Walton v. Tull*, 234 Ark. 882, 356 S.W. 2d 20 (1962), as an example of comparative negligence. If *Tull* stands for anything, it stands for the fact that a tort feasor who is no more negligent than the injured party must pay all the injured party's damages if other joint tort feasors are unable to pay. Brigham and Tull were each 10% at fault. The other two parties, in this three vehicle accident, were guilty of negligence in the degree of 60% and 20% respectively. *Tull*, if it relates to this case at all, is supportive of the appellant's position. Furthermore, Tull was a guest in his own vehicle at the time of the injury and admittedly his driver was not guilty of willful and wanton conduct. The majority states that *Tull* recognizes the view that an innocent beneficiary should be entitled to recover damages. That is not so. Tull

was guilty of contributory negligence equal to that of Brigham from whom he was allowed to recover. In the present case the father of the child was not negligent in any manner whatsoever.

There is absolutely no evidence that the husband had any knowledge of his wife's habit, if it was a habit, of taking a nap at noontime nor is there any evidence of any kind or nature to imply that the husband was negligent or knew or encouraged his wife's negligence in taking a nap at noon. This is indeed a case of first impression in holding one to be negligent by merely taking a noontime nap in his own home.

The facts set out in the majority opinion clearly show it was error for the court to direct a verdict for appellee on matters of failure to yield; failure to keep a proper lookout; failure to change lanes; and failure to slow his vehicle to such a speed as would enable the vehicle to stop if necessary to avoid the occurrence. This has been basic tort law in Arkansas for many generations. In fact, the instructions are included in our Model Instructions. This holding is contrary to all reported cases and should not be brushed off by saying that appellant's attorney was not too concerned with it.

The last error of the majority which I wish to point out is the fallacy of their statement that the court did not err in refusing to allow appellant to show the driving habits of the appellee. I think the most logical way to present this picture is to present the questions and answers as they occurred during the course of the trial. The court had just ruled that the appellee could show the habit of the child in playing on the road when the following colloquy occurred:

MR. DONOVAN: Your Honor, can I offer the testimony then of Mr. Ragsdale driving by this house?

THE COURT: For what purpose?

MR. DONOVAN: Habit.

MR. PHIL HICKY: You haven't alleged it.

MR. DONOVAN: You haven't alleged it here.

MR. PHIL HICKY: I have alleged that she didn't properly supervise and care for her children.

MR. DONOVAN: Yes, but that's on the day of the accident.

MR. PHIL HICKY: That's general. I alleged that she did not supervise and keep a proper lookout of young chldren, what a mother has an obligation to do.

MR. DONOVAN: Your Honor, whether she supervised the children on the day before or the day after has nothing to do with the day of October the 19th. He was speaking of the day before.

THE COURT: Well, I'm not going to allow you to go into the man's past driving record for reasons we have already got in the record. Anything else for me to do?

Appellant's attorney objected to this ruling by the court. Thereafter the appellant agreed to withdraw his objections to the appellee's testimony by certain witnesses about the habits of the child playing near the road in exchange for being allowed to question Mr. Ragsdale about his habit of speeding up and down the road. This was a shotgun deal and should not be approved by this court. Obviously, the trial court was trying to accommodate the parties and eliminate their objections. However good his intentions were it amounted to forcing the appellant to give up an argument which he should not have had to give up in exchange for the right to put on testimony which he already had the right to do. The majority acts erroneously in burying this objection under the statement that it was withdrawn.

I do not believe it is good law to impute the negligence of the wife, which in this case I think was nonexistent, to the husband in matters involving injury to their children or

their children's estates. He should be allowed to recover nothing at all or he should be allowed to recover his full damages. If her negligence is imputed to him and she was 75% negligent, then clearly he was 75% negligent. I cannot accept the logic of the majority opinion.