# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-3215

_____

| | | |
|---|---|---|
| Reliance National Indemnity Company, | * * * | |
| Plaintiff - Appellant, | * * | Appeal from the United States |
| v. | * * | District Court for the Eastern |
| | * | District of Arkansas. |
| Alston Jennings, Jr.; Wright, Lindsey & Jennings, a Partnership, | * * * | |
| Defendants - Appellees. | * | |

_____

Submitted: May 12, 1999
Filed: August 10, 1999

_____

Before BEAM, FLOYD R. GIBSON, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Reliance National Indemnity Company (Reliance) brought this action against Alston Jennings, Jr., and his partnership Wright, Lindsey & Jennings (collectively Jennings), for malpractice based on their representation of its insured Eastern Express in a wrongful death case which ended in a large adverse verdict. Reliance now seeks to recover from Jennings the amount it had to pay to settle the earlier case. Issues of malpractice and comparative fault were presented to a jury which found fault on each side and assessed responsibility for the loss at 97% for Reliance and 3% for Jennings.

Judgment was entered for Jennings, and Reliance appeals from the judgment and an earlier order of the district court[1] limiting its possible recovery. We affirm.

The underlying wrongful death case grew out of a fatal traffic accident in August 1991 in Lonoke County, Arkansas. A car driven by Imogene Sparks and an Eastern Express truck collided while they were driving in the same direction on wet pavement on a four lane divided highway. The impact caused the truck to jackknife and cross into the path of oncoming traffic where it was hit by a car driven by Tammy Reveley. The truck driver and Reveley were both killed.

A state trooper investigated the crash at the scene. In his written report he listed Sparks as a contributing factor to the accident but did not attribute any fault to the truck driver. His report included statements by two other drivers that Sparks' car had hit the truck: Henry Henderson, who had been driving in front of Reveley, and Avalon Meddress, a driver on a parallel service road. The state trooper also attached to his report a statement he had taken from Sparks saying that she had felt her vehicle go back and forth, but did not remember whether she hit the truck or the truck hit her.

After the accident Eastern Express turned to Reliance, its insurer, which took over its defense. Reliance is based in New York, and at that time it used the Atlanta firm of Gay & Taylor to handle claims and oversee litigation. Gay & Taylor looked into hiring an experienced Arkansas trial lawyer and engaged Jennings to investigate the accident, evaluate the potential liability, and defend Eastern Express if necessary. After conducting an initial investigation which included examining the police report, Jennings concluded there was little risk of a judgment against Eastern Express and so informed Gay & Taylor.

---

[1]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

Reveley's survivors turned down an offer from Sparks' insurers to settle for her policy limit of $50,000, but they indicated that they would settle if they received $50,000 from both Eastern Express and Sparks. Jennings told an adjuster for Sparks' insurance company that he was not inclined to "throw money at" the plaintiffs' attorney. He reported this conversation to Gay & Taylor, and Reliance made no settlement offer. In September 1992, Reveley's survivors brought a wrongful death action against Sparks and Eastern Express in Arkansas state court. After the action was commenced, the Reveley survivors increased their settlement demand to $750,000.

Approximately eighteen months before trial Jennings advised Gay & Taylor that he was unable to locate Henderson and Meddress, the two witnesses mentioned in the police report. Gay & Taylor told Jennings to ask plaintiffs' counsel to produce them for depositions if they planned to call them as trial witnesses. Jennings made the request, but they were not produced. Shortly before trial Jennings interviewed the investigating state trooper who indicated that he would testify that Sparks was at fault, not the Eastern Express driver; the interview was thus consistent with his report. Jennings was also able to find another witness to the accident, Frank Thomason, who had been about 1500 feet behind the Eastern truck. Thomason reported that the truck had not been speeding and had not left its lane before the collision. Jennings knew that plaintiffs' counsel had a witness who would testify that the truck had been speeding, but he felt that Thomason's evidence would rebut that testimony. Jennings reported to Gay & Taylor that because of the overwhelming evidence that the accident was not the truck's fault, there was an "excellent chance" of a verdict in favor of Eastern Express. Jennings estimated that even if the plaintiffs won, any judgment against the trucking company would not be more than $150,000.

The wrongful death trial was held in November 1994 in state court in Lonoke County, Arkansas, and Alvin Savage, a senior litigation supervisor with Gay & Taylor, attended the entire trial. The plaintiffs called Eugene Willard, another driver at the scene of the accident, who testified that the Eastern truck had been speeding. The

investigating state trooper took the stand and not only changed his story by implying that the Eastern Express truck had contributed to the accident, but also remarked to the jury that he should have given the truck a ticket. The plaintiffs called sympathetic witnesses concerning damages, including relatives of Tammy Reveley. Their final witness was Sparks who testified that the truck had hit her from behind and knocked her off the road, which was inconsistent with what she had told the state trooper. The only witness called by Jennings was Frank Thomason, who testified that he had followed the truck for several miles, that it had not been speeding, and that it had not left its lane at the time of the collision with Sparks' car. The plaintiffs then called in rebuttal Tammy Reveley's sister, who had not been identified as a witness and who had heard the previous testimony. She testified that Thomason had told her that the truck was speeding. The jury returned a $2,500,000 verdict in favor of Reveley's survivors and assigned 100% of the fault to Eastern Express. Eastern's post trial motion for a new trial was denied, and it appealed to the Arkansas Supreme Court. While the appeal was pending, Reliance settled the case for $1,500,000. It was later reimbursed under its reinsurance contracts for all but $262,500 of the settlement amount.

Reliance brought this action against Jennings, claiming malpractice for failing to find and call Henderson and Meddress as witnesses in the wrongful death case. Prior to trial Jennings filed a motion in limine to limit Reliance's possible recovery to the amount for which it had not been reimbursed by reinsurance — $262,500. Reliance argued in opposition that it would not be made whole unless it could collect the entire $1,500,000 paid in settlement; its reinsurance contracts required it to pay the reinsurers most of any legal malpractice award. The district court granted Jennings' motion, thus limiting any recovery for Reliance to $262,500.

The malpractice case took five days to try. There was conflicting evidence on fault and causation. Reliance called ten witnesses: Henderson and Meddress and a lawyer who had located them after the Reveley trial, Jennings, three Gay & Taylor employees who had worked on the Eastern case and two Reliance vice-presidents to

-4-

whom they reported, and an Arkansas lawyer. Jennings called six witnesses in addition to himself: the lawyers who had represented the plaintiffs and Sparks in the Reveley case, two Gay & Taylor employees, an Arkansas lawyer, and a former vice-president and general manager of an insurance company. Each side presented testimony regarding the standard of care required of an attorney and the role played by an insurance company in connection with litigation of a claim. Reliance presented evidence that Jennings was obligated to act in the best interest of his client, Eastern Express, that Gay & Taylor did not have the right to tell him how to handle the case, and that its practice was to rely on local counsel. Gay & Taylor employees testified that although they had the authority to direct an attorney's actions, they relied on the attorney for witness preparation and looked to him for advice. Jennings' insurance expert testified that a claims adjuster and an attorney work together as partners, but that the insurance company retains ultimate control — approving and paying the attorney's bills and any settlement, setting the reserve level, and deciding who to hire and fire, whether to allow depositions to be taken, and whether to settle a case.

A Gay & Taylor employee and Jennings' insurance expert both testified that they would tell an attorney if they were unhappy with his work. The only hint of any criticism made to Jennings before the Reveley trial was a 1993 letter from Savage suggesting that he should move faster on discovery. When Savage went to Arkansas for the trial he found Jennings had "almost a cavalier attitude" and was not prepared, but Jennings testified that Savage had not expressed any criticism to him and that he received none until Reliance sued him.

Prior to the Reveley trial, Jennings communicated directly only with Gay & Taylor employees who were in touch with Reliance. Gay & Taylor and Reliance witnesses testified that the nature of Jennings' communications had lulled them into a false sense of security and made them feel that there was nothing to worry about. Other evidence indicated, however, that Jennings had informed Gay & Taylor that the Reveley survivors would come across as genuine and convincing in their grief and that

there would be witnesses who would testify that the truck driver overreacted and was speeding. Gay & Taylor employees had conveyed this to Reliance and indicated that even a small finding of liability was a concern because of the possibility of joint and several liability.

Jennings had indicated that he wanted to be the one to contact witnesses. He attempted unsuccessfully to contact Henderson and Meddress by phone, and approximately eighteen months before trial he informed Gay & Taylor that the witnesses had not been found. Jennings testified that Savage knew he was not planning to call them, but Reliance employees said they had believed Jennings was continuing to look for them. Jennings' insurance expert testified that locating witnesses is usually the responsibility of the insurance company, but Gay & Taylor and Reliance employees reported that they relied on the attorney to find and interview witnesses. Reliance was able to locate the missing witnesses after the trial by using a private investigator. Jennings testified that he would have hired a private investigator if Gay & Taylor had requested it, but he had had doubts about calling these witnesses. He believed that the expected testimony of Thomason and the state trooper, together with the Sparks statement in the police report, would provide overwhelming evidence that the Eastern Express driver had not been negligent. Henderson and Meddress testified at the malpractice trial, and others disagreed on whether their testimony would have made a difference in the Reveley trial. They both indicated that the car driven by Sparks had caused the accident, but in the opinion of the attorneys for Sparks and the Reveley survivors this testimony would not have been persuasive and the identity of the parties had more to do with the Reveley verdict "than any other thing that happened."

The attorney for the Reveley survivors testified that prior to filing their action, he had indicated to Gay & Taylor that they would settle with Reliance for $50,000. At that time Reliance had an $87,000 reserve for the claim but lowered it to $50,000 after this conversation. No settlement proposal was made until a year later when Reliance offered $25,000 which was rejected. After the evidentiary portion of the trial Savage

was given authority by Reliance to settle for $250,000 and the offer was made, but the jury came back with its verdict before Savage received a response. Jennings testified that he had not been asked about settlement and that the decision whether or not to settle was entirely up to Gay & Taylor and Reliance, but a Reliance vice-president testified that he felt Jennings had given a strong recommendation not to settle. Jennings' insurance expert testified that the possibility of joint and several liability should have been a factor for Reliance in deciding whether to settle and that he would not have lost the opportunity to resolve the claim before the case was started.

The case was submitted to the jury with interrogatories on fault, causation, and comparative fault. The court overruled Reliance's objection to submission of comparative fault and also declined its request for an instruction that it had had no legal duty to settle. The jury found that Jennings had been negligent, that Reliance had been "guilty of fault," that both had proximately caused the damages to Reliance, and that the percentage of responsibility was 3% for Jennings and 97% for Reliance.

On appeal Reliance argues that the district court erred as a matter of law by submitting comparative fault to the jury and by limiting Reliance's possible recovery to unreimbursed losses. It contends that it was entitled to recover $1,500,000 from Jennings — the full amount that it had to pay to settle the Eastern case after Jennings negligently failed to produce Henderson and Meddress to testify at the Reveley trial. Jennings responds that he called the best witness in Thomason and that going with a single witness was a reasonable trial strategy designed to avoid inconsistencies. Even if Henderson and Meddress should have been called to testify, Reliance was also at fault for not locating them, and Reliance is responsible for the result which flowed from its decision not to settle the case. Reliance responds that it had no legal duty to settle.

Reliance argues that the issue of a plaintiff's fault should only be submitted to the jury in a legal malpractice action when it has taken some specific action to interfere with the attorney's performance and that there has been no allegation of such conduct

here. It cites in support a number of cases from jurisdictions other than Arkansas. Compare, e.g., Cicorelli v. Capobianco, 89 A.D.2d 842, 842–43 (N.Y. App. Div. 1982) (experienced real estate broker plaintiffs in legal malpractice action not at fault), aff'd, 449 N.E.2d 1273 (N.Y. 1983), with, e.g., Tushinsky v. Arnold, 241 Cal. Rptr. 103, 107–08 (Cal. Ct. App. 1987) (plaintiff in legal malpractice action at fault for giving attorney false information). Jennings argues that Arkansas follows traditional comparative fault principles in malpractice cases, and cites Federal Deposit Insurance Corp. v. Deloitte & Touche, 834 F. Supp. 1129, 1146 (E.D. Ark. 1992) (discussing comparative negligence in accounting malpractice context).

In a diversity case such as this we must follow state law as announced by the highest court in the state, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), but the Arkansas Supreme Court has not addressed comparative fault in a malpractice action. When the highest court in a state has not declared its law on an issue, we are "to ascertain from all the available data what the state law is and apply it." West v. AT&T, 311 U.S. 223, 237 (1940). After examining the question de novo, as we must under Salve Regina College v. Russell, 499 U.S. 225, 231 (1991), we see no reason to believe that Arkansas would limit the reach of comparative fault to the extent argued by Reliance. The cases cited by Reliance have different facts, and jurisdictions differ in their policy approach to comparative fault and malpractice.

Arkansas instituted comparative negligence as early as 1955, and today comparative negligence continues to be the state policy and permits a party to recover damages if its fault is less than that of its adversary. See Ark. Code Ann. § 16-64-122; Henry Woods & Beth Deere, Comparative Fault 528 (3d ed. 1996); see also Deloitte & Touche, 834 F. Supp. at 1146 n.28. As Judge Eisele pointed out in Deloitte & Touche:

> The Arkansas comparative fault law is capable of recognizing and
> distributing fault between parties whose misconduct contributed to an

actionable loss. As the State Supreme Court has stated, "The purpose of our comparative negligence statute is to distribute the total damages among those who caused them."

834 F. Supp. at 1146 (quoting Stull v. Ragsdale, 620 S.W.2d 264, 267 (Ark. 1981)). Clients who hire professionals should conduct their own affairs reasonably, and comparative fault considers the duties of all parties and can lead to "an even-handed apportionment of liability for harm" in professional malpractice cases. Id. at 1147.

We believe that the Arkansas courts would apply the law of comparative fault if presented with the facts of this case where there was conflicting evidence on the role and responsibilities of the competing parties. We conclude that the issue was appropriately submitted to the jury since there was evidence that Reliance "contributed to . . . [its] own harm." Susan L. Thomas, Annotation, Legal Malpractice: Negligence or Fault of Client as Defense, 10 A.L.R.5th 828, 828 (1993). This evidence included not making it clearer to Jennings that it expected him to locate and call Henderson and Meddress as witnesses, not making any effort on its own to locate them or attending more closely to the case, and not giving adequate investigation and consideration to settlement possibilities. Cf., e.g., Southern Farm Bureau Cas. Ins. Co. v. Parker, 341 S.W.2d 36 (Ark. 1960) (insurer may be liable for negligently failing to settle claim against its insured within policy limits). To be sure, there was also evidence from which the jury could have found no fault on the part of Reliance, but the issue was for the jury since there was evidence in either direction.

Since the district court did not err in submitting the question of comparative fault to the jury and there was evidence to support the jury's findings, the judgment in favor of Jennings should be affirmed. Reliance's claim that the district court erred when it limited the company's possible recovery to unreimbursed losses is thus moot since the jury found it 97% at fault and the Arkansas comparative fault statute does not allow any

-9-

recovery when a plaintiff is more at fault than the defendant.  <u>See</u> Ark. Code Ann. § 16-64-122(b)(2).[2]

For these reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]Jennings' motion to strike a portion of Reliance's reply brief as a new argument on comparative fault is also moot and is therefore denied.