BELZ-BURROWS, L.P. *v.*
CAMERON CONSTRUCTION COMPANY

CA 01-1232                                    78 S.W.3d 126

Court of Appeals of Arkansas
Division IV
Opinion delivered June 19, 2002

*Lyons, Emerson & Cone, P.L.C.,* by: *Jim Lyons,* for appellant.

*Henry, Walden & Halsey,* by: *Troy Henry;* and *Rieves, Rubens & Mayton,* by: *Elton Rieves III,* for appellee.

ANDREE LAYTON ROAF, Judge. Appellant Belz-Burrows (Belz) engaged appellee Cameron Construction Company (Cameron) as general contractor to build a building and parking lot for Belz's tenant, Lowe's Home Center. The project was substantially completed and occupied by Lowe's in 1994. In 1996, Belz sued Cameron, alleging that the parking lot had been constructed in an unworkmanlike manner. Cameron answered that the problems with the lot were due to misuse by Lowe's. The jury found in favor of Cameron, and Belz appeals. Belz argues that the trial court erred in the admission of certain evidence, in the exclusion of other evidence, and in instructing the jury. We affirm, and our affirmance makes it unnecessary for us to address issues raised by Cameron on cross-appeal.

Cameron began construction in June of 1993, with an expected completion date of December 15, 1993. Because of delays, the parking lot was only partially paved by January of 1994. Wet ground had become a problem to the extent that Cameron's paving subcontractor, Atlas Asphalt, initially refused to complete the paving. Belz, who acknowledged that weather conditions were not optimum for paving, nevertheless instructed Atlas to complete the job and agreed to hold Atlas harmless. Atlas then paved the remaining surface area of the lot, even though the paving was done over wet ground.

Because the paving was completed under adverse conditions, Cameron expected that there would be problems with the parking lot, and it extended its contractual warranty to July 1, 1996. Pursuant thereto, Cameron made various repairs to the lot, but problems such as cracking, distress, and potholes continued to arise. Belz eventually performed extensive renovation of the lot at a cost of $170,000, and in 1996, it sued Cameron to recover that amount, asserting claims for breach of contract, breach of warranty, and negligence. Cameron denied that it was at fault and pointed to Lowe's misuse of the lot as the cause of Belz's damages. In connection therewith, it filed a third-party complaint against

Lowe's, making the same allegation. However, that complaint was nonsuited two weeks before trial, and the case went to trial in May of 2001, with Belz and Cameron as the only parties.

Prior to trial, Belz filed a motion in limine to prohibit Cameron from introducing evidence that Lowe's was at fault, arguing that Arkansas law does not permit fault to be apportioned to a non-party. The trial judge denied the motion, and as a result, Cameron introduced documents, photographs, and testimonial evidence showing that Lowe's had driven large trucks, used heavy-duty equipment, and stored heavy items in areas of the parking lot that were designed for light duty. As its first issue on appeal, Belz claims that the trial court erred in denying the motion in limine.

■ The decision to admit or exclude evidence is a matter within the court's discretion. *Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001). We will not reverse a decision admitting evidence absent an abuse of discretion. *See Wal-Mart Stores, Inc. v. Londagin*, 344 Ark. 26, 37 S.W.3d 620 (2001).

■ ■ Cameron is correct that a jury should not be permitted to assign a percentage of fault to a person who is not a party to the suit. *See generally Booth v. United States Indus.*, 583 F. Supp. 1561 (W.D. Ark. 1984). This rule derives from Arkansas's comparative-fault statute, which provides that a plaintiff's fault may be compared with the fault chargeable to "the party or parties *from whom [he] seeks to recover damages.*" (Emphasis added.) Ark. Code Ann. § 16-64-122(a) (Supp. 2001). However, the jury in this case, in rendering its general verdict, did not assign a percentage of fault to Lowe's, nor compare Belz's (the plaintiff's) fault with Lowe's. The comparative-fault statute was therefore not implicated in the manner that Belz suggests. Instead, the jury considered a defense advanced by Cameron that it should be absolved of liability because a third person was the cause of the plaintiff's damages. Arkansas law expressly contemplates that a defendant may claim that a third person, who is not a party to the action, is responsible for the plaintiff's damages. The only proviso is that, before the jury can absolve the defendant of liability, it must find that the third person was the sole proximate cause of the plaintiff's damages. *See, e.g., Butler Mfg. Co. v. Hughes*, 292 Ark.

198, 729 S.W:2d 142 (1987); *Hill Constr. Co. v. Bragg*, 291 Ark. 382, 725 S.W.2d 538 (1987); *Beevers v. Miller*, 242 Ark. 541, 414 S.W.2d 603 (1967).

The jury in this case was instructed on Cameron's defense by virtue of AMI Civ. 4th 501 and 502. AMI 501 provides that, if two or more causes work together to produce damage, then the jury may find that each of the causes was a proximate cause. AMI 502 instructs that, when the acts or omissions of two or more persons work together as proximate causes of damages to another, each of those persons may be found liable, regardless of the relative degree of fault between them; further, if the jury finds that the negligence or other wrongdoing of the defendant proximately caused the plaintiff's damages, it is not a defense that some other person may have been to blame. These two instructions encapsulate the defense recognized in *Butler, Bragg, and Miller, supra.* Further, the Notes to AMI 502 recognize that these instructions should be used when there is evidence that a third person, not a party to the suit, may have been a proximate cause of the plaintiff's damages or may also have been at fault.[1] In light of these facts, there was no impermissible allocation of fault to a nonparty in this case, but rather the assertion of a defense allowed by AMI 501 and 502.

Belz argues further that Cameron cannot rely on this defense because it requires that the third party's conduct be the sole proximate cause of the plaintiff's damages, and according to Belz, there is evidence that Cameron was at least partly to blame. Our review of the evidence does not demonstrate that Cameron's fault was so well established that it should have been prohibited from relying on its defense. While Belz points to the fact that Cameron's work on the parking lot could be deemed faulty in some respects, the evidence also shows that Cameron performed numerous repairs on the lot, from which the fact-finder could infer that Cameron had met its responsibility to Belz. Belz also

---

[1] The jury was also instructed with AMI 503, which concerns intervening causes, and provides that the defendant has the burden of proving that, following any act or omission on his part, an event intervened that in itself caused damage completely independent of his conduct.

points out that Cameron admitted to being responsible for at least $5,332.60 of Belz's damages. It is true that Mike Cameron initially determined that he should bear that cost of certain repairs. However, at trial he unequivocally stated that he had no responsibility whatsoever for Belz's damages. Finally, Belz contends that Cameron's president, Mike Cameron, admitted that Lowe's was not solely at fault when he answered "that's correct" to the following question posed by Belz's attorney: "Throughout this trial your attorneys have attempted to claim that *part of the blame* in regard to this project is with Lowe's, is that correct?" (Emphasis added.) We decline to attribute great significance to Cameron's simple response to this question as fashioned by opposing counsel because it is not clear that, by so answering, Cameron intended to imply that his company was partly at fault. This is evidenced by Cameron's other testimony, mentioned previously, that he had no responsibility whatsoever for Belz's damages.

For its second issue on appeal, Belz contends that the trial court erred in excluding evidence that Cameron nonsuited its third-party complaint against Lowe's. The nonsuit was taken on April 23, 2001, for reasons not revealed in the record. During trial, Belz sought permission from the court to introduce evidence of the nonsuit to show that, if Cameron truly believed that Lowe's was to blame for the parking lot damage, it would not have dismissed Lowe's from the action. Cameron objected on the grounds that the nonsuit was irrelevant, and the trial judge sustained the objection.

■ ■ It is generally recognized that a withdrawn pleading may be admitted into evidence for impeachment purposes and may constitute an admission by a party. *See* 4 *Wigmore on Evidence* § 1067 (1973); 32 C.J.S. *Evidence* § 403 (1996); 29A AM. JUR.2D Evidence § 780 (2d ed. 1994). Our supreme court recently applied this rule in *Dodson v. Allstate Insurance Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001), holding that Allstate's withdrawn counterclaim could be used to impeach a position that Allstate took at trial. However, there is a significant difference between the admissibility of a withdrawn pleading and the admissibility of the fact that a nonsuit was taken. The admissibility of a withdrawn pleading rests on the fact that it is considered an admission and is

inconsistent with the present position of the party who filed it. When a party states a fact in a pleading, he is averring that it is true; therefore, if at trial he takes a position contrary to the one taken in the pleading, a clear inconsistency is revealed. The same reasoning does not necessarily apply to the taking of a nonsuit. Unlike a pleading, a nonsuit is not defined by its content; it does not necessarily express a statement or assert a position. A pleader who takes a nonsuit does not necessarily admit that his suit has no basis; rather, a nonsuit is often taken for other reasons, such as settlement or trial strategy. In light of that fact, we are reluctant to accord a nonsuit the same impeachment value as a withdrawn pleading. We cannot say, therefore, that the trial court abused its discretion in excluding the nonsuit from evidence.

Belz argues next that it should have been allowed to introduce into evidence a copy of the third-party complaint filed by Cameron against Lowe's. The issue arose during trial when Cameron questioned Belz's witness, Dennis Zolper, about whether Belz had sued Lowe's:

| | |
|---|---|
| CAMERON'S COUNSEL: | Well, Belz-Burrow didn't bring [Lowe's] in, did they? |
| WITNESS ZOLPER: | Well, they're already in here, if you want to get into that. |
| COUNSEL: | Belz-Burrow didn't file a claim against them, did they, Mr. Zolper? |
| ZOLPER: | We did not file suit against them, no sir. We didn't have to. |

At this point in the questioning, Belz asked to admit evidence that Cameron had sued Lowe's. The judge agreed with Belz that Cameron had "opened the door" to this issue, but he would not allow Cameron's third-party complaint to be admitted into evidence because it would "make a further complication."

■ ■ On appeal, Belz contends that Cameron's complaint against Lowe's was relevant to explain that Belz did not sue Lowe's because Lowe's had already been sued. We find no reversible error on this point. In *Jackson v. Buchman*, 338 Ark. 467, 996 S.W.2d

30 (1999), our supreme court affirmed the exclusion of certain evidence by the trial court, stating:

> [W]e have consistently held that trial courts are accorded wide discretion is evidentiary rulings, and we will not reverse such rulings absent a manifest abuse of discretion. Nor will we reverse a trial court's ruling on evidentiary matters absent a showing of prejudice. Moreover, the balancing of probative value against prejudice, pursuant to A.R.E. Rule 403, is a matter left to the sound discretion of the trial judge, and that ruling will not be reversed absent a manifest abuse of discretion. Similarly, a trial court has wide latitude to impose reasonable limits on cross-examination based upon concerns about confusion of the issues or interrogation that is only marginally relevant.

*Id.* at 471-72, 996 S.W.2d at 33 (citations omitted).

      The supreme court, in addition to applying the above-quoted standards of review, also cited Ark. R. Evid. 103(a), which provides that no error may be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. In the case before us, we hold likewise that Cameron's third-party complaint against Lowe's was of such marginal relevance that we can neither say that a substantial right of Belz was affected by its exclusion, nor that prejudice occurred that would merit reversal. While the evidence would have told the jury that Cameron had once sued Lowe's in this action, it would serve only to explain a minor point, *i.e.*, why Belz had not sued Lowe's. The question of why the parties chose to file or not file suit against Lowe's is of limited importance to the actual issues at trial. Moreover, we observe that, during opening statement, Belz's attorney told the jury that Cameron had sued Lowe's in this case, then chose to dismiss Lowe's. This statement, while not evidence, serves to further remove the prejudice from the exclusion of the complaint. *See generally Urquhart v. State*, 273 Ark. 486, 621 S.W.2d 218 (1981) (defendant in rape case not prejudiced by being required to reveal his scar to jury where, in opening statement, his counsel told jury that consent, not identification, would be the issue at trial). In light of the foregoing, we hold that no reversible error occurred on this point.

We turn now to the issues involving jury instructions. Belz argues first that the trial court erred in failing to give the following proffered instruction:

> When a contract states that "time is of the essence," then the contract is required to be performed at a specific time. Any delay in performance is a breach of contract.

A party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support the giving of the instruction. *Coca-Cola Bottling Co. v. Priddy*, 328 Ark. 666, 945 S.W.2d 355 (1997). We will not reverse a trial court's failure to give a proffered instruction in the absence of an abuse of discretion. *Id.*

Non-AMI instructions, such as the one quoted above, should be given only when the trial judge finds that AMI does not accurately state the law or that AMI does not contain a necessary instruction on the issue. *Center v. Johnson*, 295 Ark. 522, 750 S.W.2d 396 (1988). Instructions on matters on which there is no evidence or stating only abstract legal propositions should not be given. *Parker v. Holder*, 315 Ark. 307, 867 S.W.2d 436 (1993).

The jury in this case was provided with a copy of the contract, and the contract itself stated that time was of the essence. Further, the jury was instructed, using an instruction based on AMI Civ. 4th 3027, that a party's failure to do what a contract requires of it is a breach. Therefore, the jury was told that the parties agreed that time was of the essence and that a party's failure to abide by the agreement would be considered a breach. Under these circumstances, the failure to give Belz's requested instruction did not result in prejudice to Belz and did not amount to an abuse of discretion by the trial court.

Next, Belz argues that the court erred in failing to instruct the jury that, "when the acts of two or more persons combine to produce harm, any of the actors is liable to the injured person for the entire amount." The trial judge refused the give the instruction on the ground that its subject matter was adequately covered by AMI Civ. 4th 502. We agree with the trial

court. AMI 502, as stated earlier, instructs a jury that, when the negligent acts of two or more persons work together as a proximate cause of damage to another, each of those persons may be found liable. The language of AMI 502 is so similar to the proffered instruction that we cannot see how Belz was prejudiced by the trial court's refusal to give it.

Finally, Belz objected below to the trial court's decision to instruct the jury on mitigation of damages. The court told the jury that, if it assessed damages in favor of Belz, then it should consider that Belz must use ordinary care to minimize, prevent, and avoid further damages. Belz argues that the evidence did not support the giving of this instruction. We find no error.

██ ██ We note first that mitigation is a consideration in the computation of damages, not in determining the defendant's liability. *Harris Constr. Co. v. Powers*, 262 Ark. 96, 554 S.W.2d 332 (1977). Because the jury awarded zero damages, it technically found that there were no damages to mitigate, and thus, Belz was not prejudiced by the instruction. In any event, Cameron's defense in this case was based, in part, on the idea that Belz should have exercised control over its lessee, Lowe's, to avoid the parking lot damage. Such evidence supports the giving of the mitigation instruction.

Based on the foregoing, we affirm the jury's verdict in this case, and the issues on cross-appeal are rendered moot.

Affirmed on direct appeal; cross-appeal moot.

HART and VAUGHT, JJ., agree.