E-TON DYNAMICS INDUSTRIAL CORPORATION *v.* Mickie HALL, *Individually*, and as *Parent* and *Next Friend* of Shay Hall, a *Minor*

CA 02-1311                                                     115 S.W.3d 816

Court of Appeals of Arkansas
Division IV
Opinion delivered September 3, 2003

---

*Wright, Lindsey & Jennings LLP*, by: *Scott Andrew Irby*, for appellant.

*Henry Law Firm, PLC*, by: *Troy Henry*, for appellee.

JOHN B. ROBBINS, Judge. Appellant E-Ton Dynamics Industrial Corporation appeals the judgment rendered in favor of appellees Mickie Hall and Shay Hall in a products-liability case tried before a jury in Greene County Circuit Court. Appellee Mickie sued appellant on her behalf and as parent of her injured child Shay, alleging that the all-terrain vehicle manufactured by appellant was defective and negligently manufactured. The jury rendered $100,000 damage awards to each appellee on general-verdict forms. Appellant argues on appeal that the trial court (1) abused its discretion by permitting an expert witness to testify as to potential future surgery that Shay might undergo, and (2) erred by failing to instruct the jury on vicarious liability of Mickie for any negligence of her ex-husband, Danny Hall, who was driving the vehicle when Shay was injured. We find merit to the first argument and reverse and remand for a new trial.

The testimony presented to the jury revealed the following course of events relevant to the points on appeal. On the evening of August 5, 1999, Danny Hall was driving a 90cc all-terrain vehicle (a four-wheeler), accompanied by his daughters Shay and Haley. The vehicle was manufactured by appellant, but Danny exchanged some of the parts on the 90cc with those from a 50cc model to make it appear to be a 50cc all-terrain vehicle.[1] Shay, almost three years old, sat directly in front of Danny, and Haley, four years old, sat directly in front of Shay. Shay was not wearing shoes. Danny was driving up the incline of his driveway at about seven or eight miles per hour when he noticed blood. Danny looked down, where he observed that Shay's toes on her right foot were traumatically amputated. Shay was taken by ambulance to the hospital, where she stayed for five days. Shay's toes could not be reattached. Shay had three debridement procedures to cleanse the wound that were performed under general anesthesia. Shay was administered intravenous antibiotics and pain medication. Shay was treated in the hospital and thereafter by an orthopedic surgeon, Dr. William Warner. She was released with bandages and a splint on her foot, and she was prescribed medication to prevent infection and to treat pain. Shay's medical bills at the time of trial totaled approximately $20,000.

At trial, Dr. Warner's testimony, as recorded in a deposition, was read to the jury. At one point in the reading, appellant's counsel objected that the doctor should not be permitted to speculate; this was overruled. Dr. Warner explained that due to Shay's age at the time of injury, the bones where her toes were amputated could continue to grow under the skin of her foot. If that were to occur, revision surgery under general anesthesia would be conducted to remove the protruding bone. Dr. Warner stated that he had treated Shay until she was about five-and-a-half years old and that she had healed very well without any bone overgrowth to date, but that he expected her to grow until she was fourteen or fifteen years old. "[A]ny time now until she stops growing, there is a chance for this overgrowth." When cross-examined, Dr. Warner said "I can't tell you whether it will happen or whether it won't happen." Dr. Warner planned to have Shay make return appointments every two to three years to check for

---

[1] Danny placed parts from the 50cc he owned onto the 90cc. Danny explained that his daughter Haley competitively raced four-wheelers, and by altering the 90cc appearance, Haley used a faster model in 50cc model races.

overgrowth because it was a "realistic risk." Appellee states that a medical record was admitted at trial demonstrating Dr. Warner's more certain opinion that future surgery would be likely; however, that record does not appear in the transcript.

Appellant objected to this portion of the doctor's testimony because of the uncertainty of bone overgrowth. The trial judge determined that he would let the entirety of the deposition testimony be read to the jury, overruling the objection on the basis that the doctor explained the basis for his opinion. Appellant argued this point again in a motion for new trial, which was also denied. Appellant argues that this ruling is reversible error. We agree that an abuse of discretion occurred.

■■ The jury was instructed on past and future medical expenses as an element of damages. Arkansas Model Jury Instruction 2204 permits recovery for "[t]he reasonable expense of any necessary medical care" and, if applicable, "including ... the present value of such expense reasonably certain to be required in the future." Future medical expenses need not be proven with the same specificity as past medical expenses. *Matthews v. Rogers*, 279 Ark. 328, 651 S.W.2d 453 (1983). Consistent with the model instruction, showing a "degree of medical certainty" bolsters recovery of future medical expenses. *West Union v. Vostatek*, 302 Ark. 219, 788 S.W.2d 952 (1990); *Williams v. Gates*, 275 Ark. 381, 630 S.W.2d 34 (1982). There should be shown, with some degree of medical certainty, the need for future medical care. *Bill Davis Trucking, Inc. v. Prysock*, 301 Ark. 387, 784 S.W.2d 755 (1990); *Williams v. Gates, supra*; Howard Brill, *Arkansas Law of Damages* (3d ed.) § 29-1.

■ The issue raised on appeal is the admissibility of Dr. Warner's testimony on future medical expenses. To be admissible, an expert's opinion must represent his professional judgment as to the most likely or probable result. *Jacuzzi Bros., Inc. v. Todd*, 316 Ark. 785, 875 S.W.2d 67 (1994). In *Jacuzzi Bros., Inc. v. Todd, supra*, the supreme court held that a neurosurgeon's opinion that Todd had a thirty-percent chance of requiring a future surgery was not the most likely result and therefore constituted speculative evidence. We cannot logically distinguish the present appeal from *Jacuzzi Bros., Inc., v. Todd, supra*. Dr. Warner's testimony that Shay may require future surgery, which he could not predict with any degree of certainty, is speculative and therefore inadmissible. *But see Matthews v. Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983)

(holding that the trial court could properly consider future medical expenses where only the past medical expenses were certain, a doctor testified that appellee might need future medical procedures, and appellee testified he still had pain in the area); *see also Willson Safety Prods. v. Eschenbrenner*, 302 Ark. 228, 788 S.W.2d 729 (1990).

Ordinarily, a general verdict is a complete entity that cannot be divided, requiring a new trial upon reversible error. *McDaniel v. Linder*, 66 Ark. App. 362, 990 S.W.2d 593 (1999). However, a new trial can sometimes be avoided by the entry of a remittitur if the error relates to a separable item of damages, which is fixed by the highest estimate of the element of damage affected by the error. *Martin v. Rieger*, 289 Ark. 292, 711 S.W.2d 776 (1986); *Swenson v. Hampton*, 244 Ark. 104, 424 S.W.2d 165 (1968). If we are at a complete loss to say what damages the jury would have allowed if the improper evidence had not been considered, and if we cannot with confidence arrive at any maximum figure that the jury would surely have allowed absent the error, a new trial cannot be avoided by the entry of remittitur. *Woods v. Kirby*, 238 Ark. 382, 382 S.W.2d 4 (1964). If it is necessary to speculate in order to fix a remittitur, we reverse and remand the case for a new trial. *Arkansas State Highway Comm'n v. Perryman*, 247 Ark. 120, 444 S.W.2d 564 (1969); *Arkansas State Highway Comm'n v. Darr*, 246 Ark. 204, 437 S.W.2d 463 (1969); *Southwestern Bell Telephone Co. v. Fulmer*, 269 Ark. 727, 600 S.W.2d 450 (Ark. App.1980). Remand is the only remedy in this instance.

Having decided that the doctor's speculative testimony was allowed in error, we now consider appellant's contention that the trial court erred by refusing its jury instruction, as it is likely to arise upon remand. At the conclusion of the evidence, appellant's counsel proffered the following jury instruction:

> E-Ton contends and has the burden of proving that at the time of the occurrence Mickie Hall and Danny Hall were parents of Shay Hall. If you so find, then any negligence on the part of Danny Hall would be charged to Mickie Hall.

Appellant based this requested instruction on its contention that Danny was negligent in placing his daughter, barefoot, on a vehicle that he had altered and that was deemed by the manufacturer to be unsuitable for children under age twelve. Appellant

cites *Stull v. Ragsdale*, 273 Ark. 277, 620 S.W.2d 264 (1981), in support of the proposition that where a family relation exists, each parent at all times impliedly authorizes the other to act for him or her in the common care and control of their children, so that each becomes responsible for the acts of the other in that respect, and this implied authority does not rest upon legal fiction of unity of husband and wife, but is founded upon the family relation. The supreme court determined that the policy rested on the "community of interest between the husband and wife in regard to the care and supervision of their children." *Id*. at 280. In *Stull*, the supreme court noted that the purpose of our comparative negligence statute was to distribute the total damages among those who cause them. It held that in a negligence action concerning an automobile accident where the wife was 75% negligent and the truck driver who struck and killed her daughter was 25% negligent, her husband's award would be reduced by 75% of the negligence attributed by the jury to the wife.

■ Appellee counters this argument by pointing out that Mickie and Danny were divorced in 1997, eliminating the family relation, common care, and common supervision, unlike the married persons in *Stull*. We agree with appellee.

■■ Appellee also points out that Danny was never made a party to this lawsuit in order for the jury to assess apportionment of fault. A jury should not be permitted to assign a percentage of fault to a person who is not a party to the suit. *See generally Booth v. United States Indus.*, 583 F. Supp. 1561 (W.D. Ark. 1984). This rule derives from Arkansas's comparative-fault statute, which provides that a plaintiff's fault may be compared with the fault chargeable to "the party or parties from whom [he] seeks to recover damages." Ark. Code Ann. § 16-64-122(a) (Supp. 2001). *See also Belz-Burrows, L.P. v. Cameron Constr. Co.*, 78 Ark. App. 84, 78 S.W.3d 126 (2002). Nevertheless, Arkansas law expressly contemplates that a defendant may claim that a third person, who is not a party to the action, is responsible for the plaintiff's damages. *See Belz-Burrows, L.P., supra*. Appellant so claimed in its answer to the complaint. The only proviso is that, before the jury can absolve the defendant of liability, it must find that the third person was the sole proximate cause of the plaintiff's damages. *See, e.g., Butler Mfg. Co. v. Hughes*, 292 Ark. 198, 729 S.W.2d 142 (1987); *Hill Constr. Co. v. Bragg*, 291 Ark. 382, 725 S.W.2d 538 (1987); *Beevers v. Miller*, 242 Ark. 541, 414 S.W.2d 603 (1967). Such an argument was a

legitimate one to make to the jury. The non-model jury instruction that appellant proposed was not, and thus we affirm the trial court on this point.

We reverse and remand due to the admission of speculative expert testimony.

PITTMAN, J., agrees.

HART, J., concurs.